# Farley National Bank v. Henderson.

*Action on a Bill of Exchange.*

1. *Bill of exchange; liability of accommodation acceptor; effect of imposed restrictions.*—Where one accepts a bill of exchange solely for the accommodation of the drawer and for a special

[Farley National Bank v. Henderson.]

purpose, imposing restrictions upon the use to be made of the paper or its proceeds, he is, unless fraud is imputed, relieved from liability as acceptor, if such bill of exchange is transferred to one who takes it with knowledge that the terms and conditions upon which the accommodation was given were·violated, or who participates in the diversion of the paper· to .other objects or uses than such as were intended when the paper· was made.                    ,

2. *Same; same; .what constitutes a diversion.*—Where a bill of exchange is accepted solely for . the accommodation of the drawer, and for a special purpose, the mere fact that the paper was .not used in precise conformity with the agreement under which the acceptance was made, does not constitute a legal diversion of the paper; since, if the paper as used effects the substantial purpose for which it was designed, although the result was not produced in the precise manner contemplated, there is no legal diversion, unless there was fraud, or the interest. of the accommodation acceptor is thereby prejudiced.

3. *Same; action against accommodation acceptor; sufficiency of plea.*—In an action on a bill of exchange against the acceptor thereof, a plea which avers that the drawer requested the defendant to accept the bill of exchange for his accommodation to be ·used for a specific purpose and with the understanding that it should be so ·used and in consideration of a promise to so use it, he, the defendant, accepted the bill of exchange ·sued on, sufficiently shows the defendant to be an accommodation acceptor; and such a plea is not demurrable upon the ground that it fails to show a want of consideration for the acceptance.

4. *Same; same; same.*—In an action upon a bill of exchange against the drawee who had accepted it, where the defendant sets up in a special plea, by appropriate averment, that the bill of exchange sued on was accepted by him solely for the accommodation of the drawer and for a special purpose, and that the drawer, with the knowledge and participation of the plaintiff, had diverted the bill of exchange and the proceeds thereof from the purpose intended, it is not necessary, for the sufficiency of the said plea, that it should go further and negative any or all facts from which it might be inferred that the purpose of the acceptance had been substantially effected by the means employed, nor is it necessary to aver in said plea that defendant was injured by the diversion, or that his interests . were prejudiced thereby; such f acts constituting matters for special replication.

5. *Same; same; same.*—In such an action, where the defendant sets up that the bill of exchange and the proceeds thereof were . diverted from the special purpose for which the drawer

[Farley National Bank v. Henderson.]

agreed to use the paper, it is essential to the sufficiency of the plea presenting this defense, that it aver that plaintiff acquired the bill of exchange with knowledge of the terms and conditions upon which it had been accepted, and knew of the alleged diversion at the time of receiving it, or, in the absence of such averment, facts should be alleged to show that plaintiff was not a *bona fide* holder thereof.

6. *Same; transfer by drawer notice of its being an accommodation paper.*—Where a bill of exchange, which is accepted solely for the accommodation of the drawer, is transferred by the drawer, his transferee is chargeable with notice that it was an accommodation paper; since, having no vitality in the hands of the drawer, the bill of exchange was not evidence of an indebtedness against the acceptor until it was negotiated.

7. *Same; transfer in payment of antecedent debt a loan; only legal interest can be charged.*—Where the drawer of an accepted bill of exchange transfers it to another in payment of an antecedent debt, the transaction is essentially a loan of money by the transferee of the paper, and not a purchase thereof; and, therefore, the transferee is prohibited from charging the drawer more than the legal rate of interest.

8. *Negotiable instrument; usury in transfer of accommodation paper prevents transferee from being a bona fide holder.*—The holder of a negotiable accommodation paper, who acquires it under a usurious contract from the person for whose accommodation it was made, endorsed or accepted, although in the usual course of business and without actual notice, is not a *bona fide* holder; and in his hands such paper is subject to the equities and defenses which the accommodating party could have set up against the accommodated party.

9. *Pleading and practice; what necessary for plea of usury to aver.* A plea setting up the defense of usury must aver with distinctness and particularity all the essential elements of a usurious contract, and must state the amount of usurious interest charged.

10. *Action against the acceptor of a bill of exchange; sufficiency of plea of usury; bona fide holder.*—In an action upon a bill of exchange against the acceptor, where the defendant sets up by special plea that he was an accommodation acceptor, and that the bill of exchange and the proceeds thereof were diverted from the special purpose for which the drawer agreed to use the paper, but such plea fails to aver that the plaintiff acquired the bill sued on with knowledge of the terms and conditions upon which it was accepted, and of the alleged diversion, the averment that the plaintiff acquired the bill in a transaction in which he knowingly charged and received from the drawer interest at a greater rate than 8 per cent.

[Farley National Bank v. Henderson.]

per annum, is insufficient, as an allegation of usury, to show that the plaintiff was not a *bona fide* holder of the bill of exchange sued on; and, therefore, such plea is defective as setting up a defense to the action, and is subject to demurrer.

11. *Same; ratification; sufficiency of replication.*—In an action against an accommodation acceptor of a bill of exchange, where the defendant set up by special plea that he indorsed the bill solely for the accommodation of the drawer and for a special purpose, and that there had been a diversion of the bill of exchange by the plaintiff from the express purpose for which it was accepted, with knowledge that it had been diverted, a replication to said plea which avers simply that the defendant ratified the diversion of the bill after knowledge that it had been diverted, is insufficient; since when a ratification is relied upon, it is necessary to allege the facts constituting such ratification.

12. *Bill of exchange; when accommodation acceptance a binding obligation.*—Where at the time of the acceptance of a bill of exchange, the drawer gives to the acceptor a promissory note for the amount of the bill accepted, the giving of such note makes the acceptance absolutely binding upon the acceptor, when it is given in exchange for such acceptance, so as to create an independent contract and an absolute indebtedness thereon to the acceptor, as distinguished from a mere security for the acceptance.                ,

13. *Action against an accommodation acceptor on a bill of exchange; sufficiency to show acceptance a binding obligation.* In an action against an accommodation acceptor of a bill of exchange, where the defendant set up by special plea that he indorsed the bill solely for the accommodation of the drawer and for a special purpose, and that there had been a diversion of the bill of exchange by the plaintiff from the express purpose for which it was accepted, with knowledge that it had been diverted, a replication to said plea which avers that, notwithstanding the diversion alleged in defendant's special plea, the drawer gave to the defendant, at the time of his acceptance, his promissory note for the amount of the bill of exchange, "in consideration of said acceptance," is insufficient, in that it fails to show for what purpose the note was given to the defendant—whether it was given in exchange for such acceptance or as security therefor.

14. *Ratification; client's instruction to his attorney to withdraw suit relieves the former from effect of judgment.*—A client may, after suit is brought, revoke, in part, the authority previously given to his attorney to institute suit against the same person on several claims, by instructing him to withdraw one of said claims from suit; and by so instructing his attorney, the client, if he had not received, or, having re-

[Farley National Bank v. Henderson.]

ceived. had not retained any benefit from the disobedience of
his instructions, can escape the effect of such disobedience on
the part of the attorney, which resulted in a judgment on the
claim directed to be withdrawn from the suit and which
would, otherwise, have amounted to a ratification by the
client of an act disconnected with such suit.

15. *Action against an accommodation acceptor on a bill of ex-
change; pleading; sufficiency of rejoinder to replication set-
ting up ratification.*—In an action against an accommodation
acceptor of a bill of exchange, where, to a special plea setting
up that, with the knowledge and participation of the plaintiff,
the bill of exchange had been diverted from the special uses
for which it was intended. which formed the condition upon
which the acceptance was made, the plaintiff files a replica-
tion, in which he alleegs that at the time of the acceptance
the drawer gave to the defendant his promissory note for a
like amount. in satisfaction of and to secure him for such
acceptance, and that, before the maturity of the note or bill
of exchange, the acceptor sued out an attachment against the
drawer for a certain sum. in which was included said note,
and recovered judgment against him, a' rejoinder which avers
that the defendant had no knowledge of the diversion at the
time of the suing out of the attachment, and that after learn-
ing of the diversion he instructed his attorney to strike from
the attachment suit the note which had been given him as in-
demnity, and not to take judgment thereon in the attachment
suit. and to return said note to·the drawer. and it is further
averred that the acceptor had never asserted any claim
against the drawer, by reason of such note, since he knew of
the diversion of the bill sued on. such rejoinder is a com-
plete answer to the replication as setting up a ratification;
and the fact, that the acceptor's attorney, contrary to his in-
structions, did not strike said note from the suit, but recov-
ered judgment thereon, does not preclude the acceptor from
setting up such instruction in avoidance of the alleged ratifi-
cation, if the rejoinder clearly shows by its averments that
the acceptor received no actual benefit from the taking of the
judgment on said note. except the mere existence of such
judgment, which, in the rejoinder, he remits and discharges
to the extent of said note.

16. *Bill of exchange; accommodation acceptor estopped to set up
defense, by bringing suit on ·note before maturity of accept·
ance.*—Where at the time of acceptance by the drawee of
the bill of exchange, the drawer gives his note for a like
amount as the bill to the acceptor. in consideration of and
to secure him for said acceptance. if before the maturity of
such acceptance, the acceptor sues the drawer on said note,
he is thereby estopped and precluded from asserting, in an

[Farley National Bank v. Henderson.]

action against him on the bill of exchange, any defense based upon the facts that the bill sued on was accepted by him solely for the accommodation of the drawer, for a special purpose, and that it had been diverted from the uses contemplated, with the knowledge of the plaintiff in said suit; and in such case, it is entirely immaterial and without effect, in so far as the estoppel is concerned, that the acceptor, at the time he instituted suit on the note, did not know the bill had been diverted, or that, after acquiring knowledge of such fact, he instructed his attorney not to take judgment on the note.

17. *Same; same; estoppel inures to benefit of transferee of bill.* In such case, the estoppel the acceptor has worked on himself inures to the benefit of the transferee of the bill; the relation of privity existing between him and the drawer.

APPEAL from the Circuit Court of Pike.
Tried before the Hon. J. M. CARMICHAEL.

This was an action by the appellant, the Farley National Bank, against J. M. Henderson, the appellee, and counted upon a bill of exchange, which had been drawn by one J. C. McKenzie upon J. M. Henderson, and made payable to the order of the Farley National Bank, and which was accepted by J. M. Henderson.

The defendant filed eight pleas. Demurrers were sustained to the second, third, fourth and sixth pleas, and it is therefore unnecessary to set out these pleas at length on this appeal. The first plea was the general issue. The substance of the fifth plea, as amended, is stated in the opinion. The seventh and eighth pleas were as follows:

"7. Comes the defendant, by his attorneys, and for further answer to the complaint, says, that he is not liable to the plaintiff on said acceptance, described in the complaint, for this, to-wit: that prior to January 20th, 1896, the plaintiff had discounted for J. C. McKenzie & Co., a partnership composed of J. C. McKenzie and J. S. Eidson, three separate bills of exchange, each for the sum of $2,500, which said bills were, on, to-wit, the 20th day of January, 1896, still held and owned by the plaintiff and had not then matured according to their tenor and effect; that the said plaintiff, on, to-wit, shortly prior to the date last aforesaid, being desirous of having said

debt put in a different shape, requested the said J. C.
McKenzie to obtain from this defendant his acceptance
for $7,500, with which to take up and pay the three bills
above mentioned; that the said McKenzie informed the
plaintiff that he could not get the acceptance of this de-
fendant for said sum of $7,500, but that he could and
would get it for $5,000, and it was thereupon agreed and
understood between plaintiff and said J. C. McKenzie,
that the latter should procure from said defendant his
acceptance for said sum of $5,000 for the purpose of
taking up two of said bills of exchange; that the said
J. C. McKenzie thereupon came to this defendant and
requested him to accept a paper for McKenzie's accom-
modation, for $5,000, for the purpose of enabling said
McKenzie to buy out the interest of said J. S. Eidson in
said firm of J. C. McKenzie & Co. But this defendant
refused to accept the paper, for that purpose, and said
McKenzie then requested this defendant to accept a
paper for $5,000 to be used by the said McKenzie to
raise money to buy additional goods to add to the stock
of goods, wares and merchandise then in the business
of the said firm of J. C. McKenzie & Co. Defendant
avers that the said J. C. McKenzie was then indebted to
this defendant in the sum of, to-wit, one thousand dol-
lars, for which this defendant had no security; that
upon the said McKenzie agreeing and promising to use
such acceptance for $5,000 in the purchase of goods, to
be added to the stock of goods, wares and merchandise
then owned in the business of said J. C. McKenzie & Co.,
this defendant, in consideration of said promise and
relying thereon, agreed to accept, and did accept the bill
of exchange for $5,000, being the same bill sued on in
this action, and upon so accepting the same, delivered
it to the said J. C. McKenzie; and thereupon said J. C.
McKenzie, on, to-wit, the 20th day of January 1896,
took the said acceptance to the plaintiff, and then and
there informed J. L. Hall, the president of said plaintiff
bank, of the terms and conditions upon which he, the
said J. C. McKenzie, had procured the acceptance of
this defendant upon said bill as above set forth, and
that the said plaintiff, with such knowledge and notice,
acting through said J. L. Hall, its president, received
said bill of exchange from the said J. C. McKenzie in

payment and satisfaction of two of the said bills of exchange of said J. C. McKenzie & Co. herein first mentioned, which two said bills of exchange were then and there delivered to the said J. C. McKenzie. And defendant avers that said J. C. McKenzie, at the time of making said promise to this defendant to use said acceptance in purchasing additional goods to be put into the business of the said firm of J. C. McKenzie & Co., had no intention of performing said promise, but defendant, in accepting said bill as aforesaid, did so upon the faith of said promise and without any other consideration thereof, and the said bill was sold to, or discounted, with the said plaintiff by the said McKenzie in payment for said two bills of exchange, first mentioned, without the knowledge or consent of this defendant. And that this defendant had no knowledge or notice of the fact that said acceptance sued on had been used for the purpose to which it was applied, as above shown, until after the maturity of said last named acceptance, to-wit, about the first of January, 1897, and upon obtaining such information, this defandant thereupon notified the said plaintiff that he would not pay the said acceptance, wherefore," &c.

"8. For further answer to the complaint, this defendant says that he is not liable to the plaintiff on said acceptance described in the complaint, for this, to-wit, that prior to January the 20th, the said J. C. McKenzie had been engaged in carrying on the business of merchandising with one J. S. Eidson in the city of Montgomery, Alabama, and was so engaged on the 20th day of January, 1896, under the firm name of J. C. McKenzie & Co., which said firm was, on said date, indebted to the plaintiff in the three separate bills of exchange, each for the sum of twenty-five hundred 00-100 dollars ($2,500.00), which said bills were on, to-wit, the date last aforesaid, still held and owned by the plaintiff and had not then matured. according to their tenor and effect; that the said McKenzie was at that time desirous of making a change in said business, either by buying out the interest of the said Eidson therein, or by procuring this defendant to buy out said interest, and to engage in said business with the said McKenzie, and with this purpose in view, he came to this defendant and pro-

posed to him that he, defendant, should buy out the interest of said Eidson in said business, and continue the same with the said McKenzie, but this defendant declined so to do, and the said McKenzie thereupon requested this defendant to accept a bill of exchange for his accommodation for five thousand dollars, with which to enable the said McKenzie to buy out the interest of the said Eidson in said business, and to continue said business alone; but this defendant declined so to do, and the said McKenzie thereupon, to-wit, on the date last aforesaid, requested this defendant to accept for his accommodation, a bill for five thousand dollars; the said McKenzie to have the same discounted, and with the money, buy additional goods, and put them into the said business and make arrangements to buy out the said Eidson by other means, and to carry on said business alone; and, thereupon, with the distinct understanding, and agreement that the said McKenzie should take said bill of exchange and have the same discounted and use the money to buy additional goods and put the same in said business, the business to be carried on by the said McKenzie alone, who should buy out the interest of the said Eidson with other means; and in consideration of this promise and agreement, and relying on the same, this defendant did then and there accept a bill of exchange for the said McKenzie payable to the plaintiff, being the same bill of exchange sued on in this action, and upon accepting the same as aforesaid, this defendant delivered the same to the said J. C. McKenzie, who, thereupon took the same to the Farley National Bank, and in violation of his said agreement and promise, with and to this defendant, delivered the same to J. L. Hall, as president of the Farley National Bank, and for said bank, in payment and satisfaction of two of the said bills of exchange hereinabove referred to, so being held by said bank against the said firm of J. C. McKenzie & Co.; that no money was paid to the said McKenzie by said bank for said bill of exchange or other consideration than that above stated, but the same was used by the said McKenzie and the said Hall, acting for said bank, in payment for or substitution of the said two bills of exchange which said bank so held against the said firm of J. C. McKenzie & Co. And this defend-

ant further avers that the said J. L. Hall, when so acting for plaintiff as aforesaid, in said transaction by which said bank obtained this defendant's said acceptance, sued on in this action, well knew the facts hereinabove set forth, and that the said J. C. McKenzie, in so using said acceptance for five thousand dollars, was diverting and misapplying the same to another and different use from that to which he had promised this defendant the same should be applied. And defendant avers that he had no knowledge or notice of such diversion or misapplication of said bill of exchange, until the date of maturity thereof, and upon ascertaining the same, he at once notified the said J. L. Hall, as president of said bank, that he would not pay the same, and was not liable therefor. Wherefore," &c.

To the fifth plea, as amended, the plaintiff demurred, among others, upon the following grounds: 1. Said plea shows that the said J. C. McKenzie discharged a legal, binding and valid obligation against himself by the use of said bill in the manner set up, in said plea, and that by the discharge of said obligation, the said McKenzie was not rendered less able to hold defendant harmless against liability on this acceptance, than if he had purchased the goods, as it is alleged he agreed to do. 2. Because said plea does not aver and show that the defendant was injured by reason of the diversion of the bill of exchange in the manner set up in said plea. 3. Said plea fails to show that the plaintiff, at the time said bill of exchange was discounted by it or accepted by it in payment of the debt due to it by said J. C. McKenzie, had any knowledge of the alleged agreement or promise made by said McKenzie to the said defendant, that he would use said draft to procure money thereon to put in the business then being carried on by said McKenzie at Montgomery, Alabama, the money so used to be procured to be used in buying new goods, to be added to the stock of goods with which said McKenzie was then carrying on said business. 4. Said plea fails to show that there was no other valuable consideration (moving) from said McKenzie to him, the defendant, for the acceptance of the said bill of exchange, other than the promise of the said McKenzie to use the money to be procured on said bill of exchange, in buy-

ing new goods to be added to the stock of goods, with which said McKenzie was then carrying on said business. 5. Said plea shows that said bill of exchange was discounted by said J. C. McKenzie with the plaintiff, and that said J. C. McKenzie received therefor a full and adequate valuable consideration, and said plea fails to show that the said McKenzie did not receive the full benefit thereof in his business, as much so as if the money procured by the same had been used by the purchase of new goods to be added to the stock of goods with which the said McKenzie was then carrying on his said business in Montgomery, Alabama, and said plea fails to show that by the breach of his, J. C. McKenzie's, agreement, as alleged in said plea, that the defendant was in any manner injured thereby. 6. Said plea is no answer to the cause of action of plaintiff as set out in said bill of complaint, in this: That said plea sets up as a defense the mere violation of a promise of the said J. C. McKenzie to use the money or proceeds of said bill of exchange in the purchase of new goods to be added to his business in Montgomery, Alabama, and fails to show that the performance of said promise by said J. C. McKenzie, as set up in said plea, was necessary as a condition precedent to the right of J. C. McKenzie to negotiate, discount or dispose of said bill of exchange, or required of said J. C. McKenzie the performance of any condition, or doing of any act as a condition precedent to his legal right or authority to discount and dispose of said bill of exchange. 7. Because it is averred in said plea that the plaintiff 'charged and received from defendant interest on said acceptance at a greater rate than eight per cent. per annum,' but it is not shown or averred in said plea what rate of interest plaintiff charged, or at what rate of interest the plaintiff discounted said bill of exchange, or how much more than eight per cent per annum was charged by the plaintiff in discounting said bill of exchange, or that the plaintiff discounted said bill of exchange at a rate of interest greater than eight per cent. per annum discount on the face of said bill of exchange for the time the same had to run prior to maturity, at the date the same was discounted, as authorized by law.

[Farley National Bank v. Henderson.]

To the seventh plea, the plaintiff demurred upon the following grounds: "1st. Because said plea fails to show or aver that the defendant would not have accepted the bill of exchange sued on for the said J. C. McKenzie, to be used in paying the debt of said J. C. McKenzie & Co., due to the plaintiff, which it is alleged said J. C. McKenzie used said bill of exchange in paying and discharging. 2d. Because said plea fails to show that the defendant was in any way injured by reason of the said J. C. McKenzie using the said bill of exchange as alleged in said plea, in paying the plaintiff the debt due to the plaintiff by the said J. C. McKenzie & Co. 3d. Because said plea shows on its face that the said J. C. McKenzie received a full and adequate valuable consideration from the plaintiff for said bill of exchange, and fails to show that said J. C. McKenzie and the defendant in said cause did not receive as much benefit from the use of said bill of exchange in discharging the debt which the said J. C. McKenzie owed to the plaintiff, as they would have received if the said bill of exchange had been disposed of for cash and the money or proceeds of same used in the purchase of goods for the store or business of the said J. C. McKenzie & Co. according to the terms of the agreement or promise alleged to have been made by the said J. C. McKenzie with and to the defendant."

To the eighth plea the plaintiff demurred upon the following grounds: "A. Said plea fails to show that the defendant was merely an accommodation acceptor of the said bill of exchange sued on. B. Said plea fails to show that defendant was not indemnified against loss as the acceptor of said bill of exchange. C. Said plea fails to show that defendant was only an accommodation acceptor of said bill of exchange, and that the use of the proceeds of the said bill to pay debts which McKenzie was liable for, instead of using them to buy new goods, resulted in injury to defendant. D. Said plea fails to show that the defendant did not receive value for his acceptance of the bill of exchange sued on. E. Said plea fails to show that defendant has not ratified the transaction alleged to have been had between plaintiff and said McKenzie concerning the use of said bill, after he had notice that said bill had been used to pay

off said McKenzie's indebtedness, as alleged, instead of buying goods therewith.   F.  It is not averred in said plea, that the said J. C. McKenzie did not intend at the time he procured said acceptance and promised to use the same, or the proceeds of the same, in buying goods to be used in his said business of J. C. McKenzie & Co. G.  Because said plea is in the nature of a plea of *non est factum,* and is not verified by an affidavit.   H.  Said plea fails to show that there was no other consideration from the said J. C. McKenzie to the defendant for his said acceptance, other than the promise of the said J. C. McKenzie to use the same, or proceeds of the same, in buying new goods to be used in said McKenzie's business in Montgomery, Alabama."

The demurrers to these pleas were overruled, to which ruling the plaintiff duly and separately excepted. Thereupon the plaintiff filed seven replications to the fifth, seventh and eighth pleas of the defendant.   The first replication was a joinder of issue on all of said pleas. The substance of the second and fourth replications is sufficiently stated in the opinion.   The third and fifth replications, as originally filed, were as follows:   "3d. For further answer to the said pleas, the plaintiff says, that the defendant ratified the act of said McKenzie in using the bill sued on for the purpose of taking up the notes or bills referred to in said plea, instead of buying new goods with the proceeds of the bill as averred in said pleas after he (the defendant) knew of such diversion."

"5th.  For further answer  to the said pleas in  said cause, plaintiff. avers that notwithstanding the facts therein set forth, the said McKenzie in consideration of said acceptance, did, on, to-wit, the 20th day of January, 1896, execute and deliver to the defendant, payable to defendant, his promissory note in writing for $5,000, payable at the Farley National Bank, Montgomery, Alabama, due on, to-wit, Dec. 1st, 1896, containing a waiver of exemptions as to personal property, and agreement to pay attorneys' fees for collecting same if not paid at maturity and placed in the hands of an attorney for collection."   To the third replication as originally filed, the defendant demurred upon the following grounds:   "1st.  It is not averred in said replica-

tion how or in what manner or when this defendant ratified the act of said McKenzie in using the bill of exchange as averred in said 3d replication. 2d. No fact or facts are averred in said 3d replication, which show that this defendant ever ratified the act of said McKenzie in using the bill sued on as averred in said replication. 3d. Said 3d replication avers merely a conclusion of the pleader and sets forth no fact or facts from which the court can determine whether or not this defendant ever ratified the said act of the said McKenzie in the use he made of said bill of exchange sued on."

To the fifth replication as originally filed, the defendant demurred upon the following grounds: 1. "It is not averred in said 5th replication upon what consideration or for what purpose the said McKenzie executed and delivered to the defendant the promissory note mentioned in said 5th replication." 2. "It does not appear from said 5th replication that the said promissory note therein mentioned was given by said McKenzie to protect or secure this defendant against his acceptance of the bill of exchange sued on in this action." 4. "It appears from said 5th replication that the note therein referred to was given for an obligation for which said McKenzie was already bound to the defendant. And it is not averred that said McKenzie gave any security to the defendant for said note."

These demurrers were sustained, and thereupon the third and fifth replications were then amended by adding to each of them the following averments: "The defendant brought his suit of attachment against the said McKenzie in the city court of Montgomery on the 24th or 25th day of November, 1896, claiming as part of the indebtedness a note for five thousand dollars given to him by said McKenzie, dated January 20th, 1896, and payable to the defendant at the Farley National Bank, in Montgomery, Ala., on the first day of December, 1896. That afterwards, to-wit, on or about the 15th day of February, 1897, the defendant filed a complaint in said attachment cause claiming five thousand dollars of said McKenzie on said note for said five thousand dollars, aforesaid, and on or about the 18th day of February, 1897, recovered a judgment in said attachment cause against said McKenzie for a large sum,

to-with, about ($18,000) eighteen thousand dollars or other large sum, and that said judgment included the said five thousand dollar note. And the plaintiff avers that the defendant was made acquainted with the alleged diversion of the proceeds of the said note for five thousand dollars sued on, on or about January 4th, 1897, and that said defendant has received the proceeds of the goods levied on under said attachment, and on said judgment, to-wit, ten thousand dollars or other large sum, and said judgment is still of force, except for the amount paid on same as aforesaid."

It is unnecessary to set out at length the sixth and seventh replications. There was a demurrer sustained to the sixth and seventh replications, in so far as they purport to answer the defendant's fifth plea, and to this ruling the plaintiff duly excepted.

To the second, third, fourth and fifth replications, the defendant filed a rejoinder, the averments of which are sufficiently shown in the opinion. To this rejoinder, the plaintiff demurred among others, upon the following grounds: 1st. That said rejoinder does not admit or deny that judgment was rendered in the city court of Montgomery in the attachment suit referred to in said replication, for a sum which included the note for five thousand dollars, which said McKenzie gave to defendant, dated January 20th, 1896, and payable December 1st, 1896, at the Farley National Bank in the city of Montgomery, Alabama. 2d. Because said rejoinder does not admit or deny that the said note for five thousand dollars was merged in the said judgment which defendant obtained against the said McKenzie in said attachment suit. 3d. Because said rejoinder fails to show that defendant did not receive the proceeds of the sales of said stock of goods, wares and merchandise levied on under the attachment as stated in the 2d replication, and on the judgment in the city court of Montgomery, in which the said note for five thousand dollars given by McKenzie to Henderson was merged. 4th. Because said rejoinder shows that his attorney in the attachment suit in the city court of Montgomery against McKenzie, referred to in the second replication, failed to carry out his instructions, but in spite thereof, incorporated the said note for five thou-

sand dollars, given by McKenzie to Henderson, in the
judgment, and that the said Henderson received pay-
ment of ten thousand dollars or other large sum on said
judgment; that said sum of ten thousand dollars or
other large sum was the proceeds of the
sales of goods, wares and merchandise, which
had been levied on under said attachment, and
that said five thousand dollar note was a part of the
claim for which said attachment was sued out. 5th.
Because said rejoinder shows on its face that the de-
fendant has now standing in his favor a judgment in
the city court of Montgomery for a sum which includes
the note dated January 20th, 1896, and payable Decem-
ber 1st, 1896, for five thousand dollars, given by McKen-
zie to the defendant, and that defendant has received on
said judgment the sum of ten thousand dollars or other
large sum. 6. Because said rejoinder shows that
judgment was rendered in the city court of Montgom-
ery, as averred in said replication, and that ratification
was thereby made of the use which McKenzie made of
the bill sued on. 7. Because the said rejoinder
shows that the five thousand dollar note, which McKen-
zie gave to defendant Henderson to cover his indorse-
ment of the bill sued on, was included in the attachment
suit against McKenzie by defendant Henderson, and
that although he, defendant Henderson, instructed his
attorney, J. M. White, on or about January 4th, 1897,
not to include said note in any judgment he might take
in said attachment suit, said attorney did incorporate
said note in the complaint filed in said cause, and the
amount of said note was merged in said judgment and
that upon said judgment the defendant received a pay-
ment of $10,000 or other large sum, out of the proceeds
of a sale of the good levied on under said attachment.
8. Because the rejoinder shows that said note for
$5,000, given by McKenzie to the defendant Henderson
was actually merged into the judgment in favor of de-
fendant against McKenzie in said attachment suit, and
that the discharge offered, made in said rejoinder, of
said judgment to the defendant, is only a discharge of
the said judgment *pro tanto,* and not of the claim of
said Henderson against said McKenzie, which was
formerly evidenced by said note for $5,000 given by said

McKenzie to said Henderson, dated January 20th, 1896. This demurrer to the defendant's rejoinder was overruled, and to this ruling the plaintiff duly excepted. Thereupon issue was joined upon the pleadings. The facts of the case, as shown on the trial, are sufficiently shown in the opinion.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury, among other charges, the following: "If the jury believe the evidence in this case, they will find a verdict for the plaintiff." The court refused to give this, together with the other charges requested by the plaintiff, and to the refusal to give each of said charges the plaintiff separately excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several ruling of the trial court to which exceptions were reserved.

GUNTER & GUNTER, R. L. HARMON and J. D. & C. H. ROQUEMORE, for appellant.—1. An accommodation party can not complain of a diversion unless he shows some interest in the particular application of the money—it must be a matter of concern to him that it be applied in one way rather than another. And if the purpose of the accommodation is substantially accomplished in fact, it can make no difference that it is not done with the particular proceeds of the particular paper.—1 Daniel on Neg. Instruments, §792-3; *Frank v. Quast,* 6 S. W. Rep. 909; *Morris v. Morton,* 14 Neb. 360; *Duncan v. Gilbert,* 29 N. J. L. 521; *Briggs v. Boyd,* 37 Vt. 538; *Wardell v. Howell,* 9 Wend. 170; *Purchase v. Mattison,* 6 Duer 587; *Schepp v. Carpenter,* 51 N. Y. 602; *Read v. Trentman,* 53 Ind. 438; *Moore v. Ward,* 1 Hilton, 337; *Quinn v. Hard,* 43 Vt. 375; *Rogers vs. Sipley,* 6 Vroom 86; *Corbitt v. Miller,* 43 Barb. 305; *Benjamin v. Rogers,* 10 N. Y. Supp. 777; *Parker v. McLean,* 12 N. Y. Supp. 219. Here the pleas do not aver that the thing to be done was not done, but only that it was not done in a particular way. This is not sufficient.—*Bunzel v. Maas,* 116 Ala. 68.

2. On an exchange of bankable paper each party stands as a holder for value and has the uncontrolled

power to use the paper in hand at his pleasure.—4 Encyc. of Law (2d ed.) 188; 2 Encyc. of Law, (2d ed.) 338; *Cohn v. Husson*, 23 N. E. Rep. 573; *Parker v. Mc-Lean*, 12 N. Y. Sup. 219; Chitty on Bills, 708; *Rolfe v. Caslon*, 2 H. Bl. 570; *Buckler v. Buttivant*, 3 East. 72; *Spencer v. Parry*, 3 A. & E. 331.

3. The fifth plea of the defendant was no answer to the complaint. The fact that a paper was for accommodation cuts no figure whatever against a party who has bought it before maturity for value. A consideration between the original parties is unnecessary—that moving between the seller and the buyer (though the latter knows that the paper is for accommodation) upholds not only the promise of the seller but that of all the other parties as they stand upon the bill.—*Marks v. First Nat. Bank*, 79 Ala. 550. And the taking of the bill in payment of an antecedent debt is in all respects the same as if the cash had been paid for it.—*Marks v. First Nat. Bank*, 79 Ala. 563; *Spira v. Hornthall*, 77 Ala. 137. The parties to every accommodation bill hold themselves out to the public, by their signatures, to be absolutely bound to every person, who shall take the same for value, as if that value were personally advanced to them, or on their account and at their request.—Story on Bills, §192; *Connerly v. Plant & M. Ins. Co.*, 66 Ala. 442; Chitty on Bills, 80, 305; 2 Parsons on Notes & Bills, 27.

4. The allegation, which is admitted on demurrer, that the purchase of the bill was made at more than eight per cent. interest per annum, could have no other effect than to make the contract of purchase usurious, and open to that defense, when duly pleaded, to the extent allowed by law. There was no inhibition on Mc-Kenzie to sell the paper at usurious rates. He had the right to do so, if he chose. And the defendant has no more justification in refusing to pay his accommodation paper because it was sold on usury than McKenzie would have, who made the sale and received the proceeds. In contemplation of law it stands as if the proceeds had been actually received by the accommodation party.—*Marks v. First Nat. Bank*, 79 Ala. 550, 562; *Bunzel v. Maas*, 116 Ala. 68; *Connerly v. Plant. & M. Ins. Co.*, 66 Ala. 432. If there was no consideration

then it was for accommodation, and to be used by sale "to obtain money," and a sale to pay, or in payment cf, a previous debt is the same as a sale for money. "Discounting the note and discharging the prior debt with the proceeds, is the same thing in legal effect as the payment of the money ou it."—*Bank of Sandusky v. Scoville*, 24 Wend. 115; *Marks v. First Nat. Bank*, 79 Ala. *supra;* Edwards on Bills & P. Notes, 322.

5. The averment in the plea that more than 8 per cent. *per annum* was received was not material unless it was intended to aver that usury had been charged and received. The bank had the right to discount the bill at 8 per cent.—1 Brick. Dig. 237, §157, *et seq; Tiffany v. N. B. of Mo.* 18 Wall. 409. If then the 5th plea set up a diversion of the acceptance by McKenzie, the 6th and 7th replications afforded full answers by averring that the plaintiff bought *bona fide* for value in the due course of trade at 8 per cent. discount before maturity and without notice. And it was such purchaser even though usury had been charged.—*Oates v. Nat. Bank*, 100 U. S. 239; *Marks v. First N. Bank*, 79 Ala. 557.

6. The replications set up facts which showed that the defendant was not an accommodation acceptor and that McKenzie was the absolute owner of the acceptance, and therefore that there could be no diversion that the defendant could complain of. The rule is well settled, that, when a party gives his acceptance to one person and receives the acceptance or bill of the person so accommodated in exchange, each stands as a *bona fide* purchaser for value of the securities so delivered. Edwards on Bills & Promissory Notes, 322; *Wooster v. Jenkins*, 3 Denio 187; *Mickles v. Colvin*, 4 Barb. 304; *Cameron v. Chappell*, 24 Wend. 94; *Rice v. Mather*, 3 Wend. 62; 2 Randolph on Commercial Paper, §479, and the many authorities there cited.— *Newman v. Frost*, 52 N. Y. 422; *Backus v. Spaulding*, 116 Mass. 418. Again, if the acceptance was bought on usury, still it would not constitute notice of collateral promises between McKenzie and Henderson.—*Marks v. First Nat. Bank*, 79 Ala. *supra; Oates v. Nat. Bank*, 100 U. S. *supra; Bunzel v. Maas*, 116 Ala. 68.

TOMPKINS & TROY and W. L. PARKS, *contra.*—There

was no error in the court overruling the demurrer to the fifth plea. The demurrer is not to the particular part of the plea which undertakes to set up usury, but it is to the whole plea. And it is clear that, if the plea presented a defense to the action, or a *prima facie* defense to the action, the fact that it insufficiently set out some unnecessary allegation is not a ground of demurrer to the whole plea. When the plea averred that the acceptance was for the accommodation of McKenzie, and that it was upon condition that the money was to be used for a specific purpose, that plaintiff with knowledge that he was an accommodation acceptor took the paper and applied it to another and different purpose, that made out a *prima facie* defense and shifted the burden upon the plaintiff of showing that it was a purchaser for value in the usual course of trade.—*Hanrick r. Andrews,* 9 Port. 37; *Boyd v. McIvor,* 11 Ala. 822; 4 Amer. & Eng. Encyc. of Law, (2d ed.) 321 *et seq.* and notes.

2. The facts set out in the plea, independent of the averment of the manner in which the plaintiff acquired the note, clearly show that, in obtaining appellee's acceptance upon the paper, and in disposing of the paper in the manner in which he did, McKenzie perpetrated a fraud upon appellee. In such cases it is always incumbent upon the holder of the bill, where such a state of facts is averred, to plead and prove that he was a purchaser for value and without notice.—*Ross v. Drinkard's Admr.,* 35 Ala. 434; *Chambers v. Falkner,* 65 Ala. 448; *Emerson v. Burns,* 114 Mass. 348; *Ninckerson v. Ruger,* 76 N. Y. 279.

3. Any plea in bar which *prima facie* shows a defense to the action is sufficient. If the defendant goes further and avers matters which it was unnecessary for him to aver, negativing matter which properly should have been replied to the plea, that cannot vitiate the plea. It might be ground, if a matter was insufficiently averred, for striking from the plea that portion. The rule is, that where a demurrer is to the entire pleading and facts are averred in such pleading which show a cause of action or a defense, although other facts may be insufficiently averred in the pleading, the demurrer should be overruled.—*Roland v. Logan, Ex'r,* 18 Ala. 307; *Wilson v.*

*Cantrell,* 19 Ala. 642; 2 Brick. Dig. p. 347, §287; *Ward v. Neal,* 35 Ala. 602.

4. Where the effect of usury is to vitiate and avoid the contract, then it is not necessary to plead it at all. It has long been the well settled law of Alabama that usury, having this effect, may be introduced in evidence under the general issue.—*Hanrick v. Andrews,* 9 Port. 9. A reference to the decisions of our court in which it has been held that one who purchased property upon a usurious consideration, or discounted a note at a usurious rate, was not a *bona fide* purchaser for value and entitled to protection as such, will show that this court has repeatedly recognized that the usury there set up is not the usury referred to in the opinion relied upon by the court in this case to sustain its position. The defense here is not usury.—*Wailes v. Couch,* 75 Ala. 135; *Saltmarsh v. Tuthill,* 13 Ala. 390; *Capital City Ins. Co. v. Quinn,* 73 Ala. 558; *Carlisle v. Hill,* 16 Ala. 398.

5. Upon the institution of a suit on a note given to the defendant by McKenzie, the drawer at the time of the defendant's acceptance of the bill of exchange, the defendant did not estop himself to deny that he was the accommodation acceptor of said bill of exchange, and that the bill and its proceeds had been diverted from the purposes for which he accepted it. The pleadings setting up the estoppel lack many of the elements which constitute an estoppel. The rule has been formulated as follows: That if one person by his conduct willfully causes another to believe in the existence of a certain state of things and induces that other to act on that belief, so as to alter his own previous position, the first is estopped from averring against the latter a different state of things as existing at the same time. In the English notes to the same cases, on p. 99, it is declared that the representations or conduct, in order to create such an estoppel, must have been the means of inducing the other to alter his position. A number of authorities are cited to sustain this proposition. And in the American notes to the same cases it is further declared that, in order to create such an estoppel, there must have been on the part of the person whose conduct is set up as such an intent that his conduct should be acted upon. And, further, that he must not have been in ignorance

of the facts.—*Leinkauff v. Munter,* 76 Ala. 194; 2 Pomeroy's Equity, §805; 7 Amer. & Eng. Encyc. of Law, pp. 14-15; *Taylor v. Zepp,* 55 Amer. Dec. 113; *Phillipsburg Bank v. Fulmer,* 86 Amer. Dec. 193.

6. Neither was Henderson's act in bringing this suit such an election as will prevent him, under the facts shown by the pleadings, from repudiating his claim against McKenzie upon the note by setting up that he is not liable upon the bill. This doctrine of election is taken from the old equity rule which declared that one who had taken a beneficial interest under a will had ratified and confirmed the whole will, and that he would not be permitted to set up any claim against it. It is treated now as a phase of estoppel, though it is hardly correctly so. In the 10 English Ruling Cases, on p. 351, the rule, as deduced from the leading case of *Pusey v. Desbouvrie,* decided by Lord Chancellor Talbot in 1734, and the other cases on the doctrine following, it is declared that an election cannot be binding unless the party has manifested his election by an unequivocal act with knowledge both as to his rights, and as to the value of the respective benefits. In the English and American notes in the report referred to, it is declared emphatically, and numerous authorities in both countries are cited to sustain the proposition, that it is essential that a person setting up an election by which he seeks to bind another must show that that other did the act which it is claimed amounts to an election with full knowledge of all his rights.—10 Eng. Rul. Cases, pp. 367-9; Bigelow on Estoppel, 503; *Connihan v. Thompson,* 111 Mass. 272; *Hays v. Midas,* 104 N. Y. 602; *Foundry Co. v. Hersee,* 103 Ala. 25; *Fowler v. Bowery Bank,* 10 Am. St. Rep. 491.

BRICKELL, C. J.—Appellant brought this action to recover upon a bill of exchange for the sum of $5,000, drawn by J. C. McKenzie upon appellee, dated January 20, 1896, payable to the order of appellant December 28, 1896, and accepted by appellee. The defense set up by the various special pleas was, that the bill had been accepted by the defendant solely for the accommodation of the drawer and for a special purpose, and that the drawer, with the knowledge and participation of

plaintiff, had diverted the bill and the proceeds thereof from the purpose intended.

Accommodation paper is a loan of credit by the accommodation party to the party accommodated to the extent of the value of the paper. *Prima facie* it is without restriction as to the manner of its use, and the accommodated party may use it for any legal purpose, and when thus used, and in the hands of a *bona fide* holder, in due course, for value, it becomes precisely what on its face it imports, and is no less binding on the accommodation party because of its character as accommodation paper. But one who thus lends his credit may undoubtedly do so upon such terms and conditions as he sees fit, and may impose restrictions upon the use to be made of the paper or its proceeds. When such restrictions are imposed, whoever takes the paper with knowledge that the terms and conditions upon which the accommodation was given are being violated; whoever participates in the diversion of the paper to other objects or uses than such as were intended when the paper was made, unless fraud is imputed, must be understood to relieve the party giving the accommodation from all liability.—*Gilman v. N. O. & S. R. R. Co.,* 72 Ala. 581; *First Nat. Bank v. Dawson,* 78 Ala. 67; *Marks v. First Nat. Bank,* 79 Ala. 550; 1 Amer. & Eng. Encyc. of Law, (2d ed.), 383; 3 Rand. Com. Paper, §1803. The mere promise or statement of the accommodated party that he will use the paper for a particular purpose, will not, however, amount to such a restriction as to its use as will render the violation of the promise a legal diversion of the paper, unless it is exacted or made as the condition upon which the accommodation is given, and is relied on by the party giving the accommodation. Nor is there a legal diversion merely because the paper is not used in precise conformity with the agreement. If it effects the substantial purpose for which it is designed, although the result was not produced in the precise manner contemplated, there is no legal diversion, unless there is fraud, or the interest of the accommodation party is thereby prejudiced.—1 Dan. Neg. Ins., §792; *Duncan v. Gilbert,* 29 N. J. L. 521; *Jackson v. Bank,* 42 N. J. L. 177; 1 Amer. & Eng. Encyc. Law, (2d ed.), 380, and cases cited. And it may be stated gener·

ally that when the restriction is only as to the use to be made of the proceeds of the paper, the misapplication of the proceeds by the accommodated party is no defense to an action on the paper by the holder who gave value for it, since the latter is not obliged to see that the proceeds are applied in the manner and for the purpose contemplated by the accommodation party.—*Bunzel v. Haas,* 116 Ala. 68; 1 Amer. & Eng. Encyc. of Law, (2d ed.), 382. But it is manifest this rule can not apply where the person who discounts the paper himself receives the proceeds in payment of a debt due by the accommodated party, with knowledge that such application thereof is a diversion from their intended purpose.

The fifth plea avers that defendant accepted the bill sued on for the accommodation of J. C. McKenzie, the drawer, "upon and in consideration of a promise then made by said McKenzie to this defendant, that if defendant would accept said bill, the said McKenzie would use it to obtain money thereon, and buy additional goods and put the same in the business then being carried on by said McKenzie," that after receiving the acceptance, McKenzie delivered it to plaintiff in payment of a debt due by him to plaintiff, and that in this transaction plaintiff "willfully and knowingly charged and received from McKenzie interest on said acceptance at a greater rate than eight per cent per annum." The p'· a sufficiently shows that the bill was accepted by defendant upon condition that McKenzie would have it discounted, or otherwise obtain money on it, and with the proceeds buy additional goods to use in his business, and the condition was one which defendant undoubtedly had the right to exact. It cannot be inferred from the plea that it was an entirely immaterial condition, which defendant had no interest in having performed, or that defendant had no interest in the application of the proceeds of the bill which could be prejudiced by their application to the payment of McKenzie's debt; or that the payment of said debt substantially effected the purpose contemplated by defendant when he accepted the paper. He was clearly interested in the future ability of McKenzie to meet the paper when it should mature, and he had a right to impose such restrictions on the use of the proceeds as would, in his opinion, if com-

plied with, better enable him to meet it; and he may have believed, and had good reason for the belief, that McKenzie would be better able to meet the paper by using the proceeds thereof directly in his business, through the purchase of much needed goods, than by using it to pay a past debt.—*Benjamin v. Rogers,* 126 N. Y. 60; *U. S. Nat. Bank v. Ewing,* 131 N. Y. 506. The plea having averred that the bill was used to pay the debt to plaintiff, showed, *prima facie,* a diversion, and it was not necessary that it go further and negative all or any facts from which it might be inferred that the purpose of the acceptance had been substantially effected by other means. If by the use of the bill in payment of his debt, McKenzie was enabled to procure from other sources money to the same amount with which to buy for cash additional goods, and did, in fact, procure such money and purchase such goods and place them in his business, and if, by so doing, he effected the purpose contemplated, these were properly matters for replication, not necessary to be negatived in the plea. Nor was it necessary to aver in the plea that defendant was injured by the diversion, or that his interests were prejudiced thereby. This, also, was matter for replication, and the burden was on plaintiff, and not on defendant, to show that no injury was suffered.—*Rochester v. Taylor,* 23 Barb. (N. Y.) 18. The plea differs from that discussed in *Bunzel v. Maas,* 116 Ala. 68, in this, that in that case the plea failed to show to what use the proceeds of the note were applied, and hence showed no diversion thereof; while in this, the plea clearly avers that the proceeds were used for a particular purpose different from that contemplated, and therefore shows, *prima facie,* a diversion. But it was clearly essential to the sufficiency of the plea, that it aver that plaintiff acquired the bill with knowledge of the terms and conditions upon which it had been accepted, or, in the absence of such averment, that facts be alleged to show that plaintiff was not a *bona fide* holder thereof. Such knowledge, actual or implied, is essential to such a defense, and the weight of authority now is, although there are some decisions to the contrary, that the defendant must not only show that the paper was diverted from its intended purpose, but also

that such diversion was known to the holder when he received it; the misapplication not being such fraud as shifts the burden of proof.—1 Dan. Neg. Ins. §790; *First Nat. Bank v. Dawson,* 78 Ala. 71. The plea contains no averment of such knowledge on the part of the plaintiff, and it is, therefore, defective, unless it is aided by the averment that plaintiff, in the transaction by which it acquired the bill, "knowingly and wilfully charged and received from McKenzie interest on said acceptance at a greater rate than eight per cent per annum." The paper having been given to plaintiff by the drawer, plaintiff was chargeable with notice, by reason of this fact, that it was accommodation paper, having no vitality in the hands of McKenzie, and was not evidence of an indebtedness against the acceptor until negotiated.—*Marks v. First Nat. Bank,* 79 Ala. 562. The transaction, as shown by the plea, was essentially a loan of money by plaintiff on the paper, and not a purchase thereof, and plaintiff was, therefore, prohibited from charging McKenzie more than the legal rate of discount.—*Capital City Ins. Co. v. Quinn,* 73 Ala. 558. And it is well settled by the decisions of this court that the holder of negotiable accommodation paper, who acquires it upon a usurious contract from the person for whose accommodation it was made, indorsed, or accepted, although in the usual course of business and without actual notice, is not a *bona fide* holder; and in his hands it is subject to the equities and defenses which the accommodation party could have set up against the accommodated party.—*Saltmarsh v. Tuthill,* 13 Ala. 390; *Carlisle v. Hill,* 16 Ala. 398; *Capital City Ins. Co. v. Quinn, supra.* If, therefore, the averments charging usury are sufficient, plaintiff was chargeable with notice of the terms and conditions on which defendant accepted the bill, not being a *bona fide* holder, and the failure to directly allege such notice was not a defect. But the allegation of usury was insufficient on demurrer. A plea setting up the defense of usury must aver with distinctness and particularity all the essential elements of the usurious contract, so that an inspection of the plea will reveal the entire transaction and leave nothing to conjecture, and must state the amount of usurious interest charged.—*Woodall v. Kelly,* 85 Ala.

368; *Kilpatrick v. Henson*, 81 Ala. 469; *Munter v. Linn*, 61 Ala. 492. The plea fails to meet these requirements, and it is, therefore, insufficient to show that plaintiff was not a *bona fide* holder of the bill sued on. For the above reasons the court below erred in overruling the demurrer to the fifth plea as amended.

Much that has been said above with respect to the fifth plea is equally applicable to the seventh and eighth pleas. They contain substantially the same averments as the fifth, with the exception of the charge of usury, which is omitted, besides many additional averments showing the circumstances under which defendant's acceptance was procured, and each distinctly avers that plaintiff received the bill with full knowledge of the terms and conditions on which it was accepted and of the facts stated in the plea. These pleas were not subject to the infirmity of the fifth, pointed out above, nor were they objectionable on any of the grounds specified in the demurrer thereto, and the demurrers were, therefore, properly overruled.

Plaintiff filed seven replications to defendant's pleas, and demurrers were sustained to the third and fifth, and also to the sixth and seventh in so far as the latter purported to answer the fifth plea. The third and fifth original replications were clearly objectionable, and the demurrers thereto were properly sustained. The third avers that defendant ratified the diversion of the bill after knowledge that it had been diverted, but fails to allege the facts constituting the ratification. The averment was, therefore, the statement of a mere conclusion. The fifth fails to show for what purpose McKenzie gave to defendant his note for $5,000 at the time the latter accepted the bill sued on—whether it was given in exchange for said acceptance, or as security therefor. The fact averred could constitute a defense only in the event the note was given in exchange for the acceptance, so as to create an independent contract and an absolute indebtedness to the defendant thereon. This is not sufficiently shown by the averment that it was given "in consideration of said acceptance." Each of these replications was subsequently amended, and as amended no demurrer was interposed to them. The sixth and seventh replications set up no matter which

could not have been shown under the first, which joined issue on the pleas, and the sustaining of the demurrer to these constituted no error of which plaintiff can complain. The second replication averred that defendant, with knowledge of the fact that the bill had been diverted to other uses than those intended, had ratified said diversion, and set out the fact relied on constituting the ratification. These facts are, that at the time McKenzie procured defendant's acceptance of the bill he gave to the latter his promissory note for a like amount, payable December 1, 1896, a date prior to the date of the maturity of the bill, "in consideration of and to secure him for such acceptance," and that on November 25, 1896, defendant sued out an attachment against said McKenzie for the sum of $17,046.72, which sum included said note, and said attachment was levied on the stock of goods in McKenzie's possession, which were subsequently sold, in advance of judgment, under an order of court obtained on this defendant's motion, and the proceeds of which were paid to defendant on the 18th, 20th and 22d days of February, 1897; that about February 15, 1897, defendant filed a complaint in said cause claiming said sum of $17,046.72, due by certain promissory notes, among which was the note given to secure defendant on his acceptance, and on February 18, 1897, judgment was rendered thereon in favor of defendant, the plaintiff in said cause, which said judgment includes the amount of said notes. In the fourth replication the same facts are averred by way of estoppel. In the fifth as amended, substantially the same facts are averred, but the note above mentioned is alleged to have been given "in consideration of said acceptance." To the second, third, fourth and fifth replications defendant rejoined that at the time he sued out said attachment he had no knowledge or information that the bill sued on had been diverted, and that as soon as he learned of the diversion, on January 4, 1897, he instructed his attorney in the attachment suit "to strike therefrom the said note for $5,000 mentioned in said second replication, and not to take judgment in said attachment suit for the amount of said note, and that the judgment recovered in said attachment suit included the amount of said note contrary to the in-

structions of this defendant;" that defendant had no knowledge or notice that said note was included in the judgment until after. the distribution of the proceeds of the sale of the attached property and the expiration of the term of the court at which the judgment was rendered, and that the proceeds of the sale of said property were insufficient to pay the amount of the indebtedness sued for exclusive of the amount of said note. It is further averred that defendant also instructed his attorney to return said note to McKenzie, and that he has never asserted any claim against McKenzie by reason of said note since the diversion of the bill sued on became known to him, and that he now remits and discharges said judgment to the extent of the amount of said note with interest.

It seems clear that an accommodation maker, indorser or acceptor of negotiable paper who, with knowledge that the paper has been diverted from the special uses intended, and before it becomes due, realizes, or attempts to realize, on the securities placed in his hands for indemnity by the accommodated party, must be held to have ratified the diversion by such action. For the implied agreement between the parties is that the accommodated party will meet the paper when it becomes due, and that, in the event he defaults and the accommodation party has to pay the debt, the latter may then, and not until then, reimburse himself from the securities. If for any reason, known to him, he has incurred no liability by reason of his signature to the paper, he acquires no right to retain or dispose of the securities. His disposal of the securities, or attempt to dispose of or realize on them, after knowledge of the facts which exempt him from liability, is, therefore, a clear acknowledgement of his liability and waiver of such facts; and if the cause of the exemption is the diversion of the paper, such action is a clear ratification of such diversion. In so far as the ratification is based on the suing out of the attachment, the rejoinder is a complete answer to the replication as a plea of ratification, since it distinctly avers that defendant had no knowledge of the diversion at the time the attachment was sued out. But the replication further alleges in support of the ratification that the defendant took judg-

ment on said note at a time which, as shown by the rejoinder, was subsequent to his acquisition of knowledge of the diversion, and this allegation the rejoinder attempts to meet and answer by the averment that, after defendant had acquired such knowledge, he instructed his attorney not to take judgment on said note. One of the questions presented by the demurrer to the rejoinder is, therefore, whether the action of defendant's attorney, in taking such judgment contrary to the instructions of his client, was binding on the latter in such sense as to preclude him from setting up such instructions in avoidance of the alleged ratification. We are unable to perceive any sound reason why a client may not, after suit brought, revoke in part the authority previously given to his attorney to institute suit against the same person on several claims, by instructing him to withdraw one of said claims from suit, and thereby escape the effect of the attorney's disobedience of the instructions as a ratification of some other act entirely independent of and having no connection with this suit, where he has not received, or, having received, has not retained any benefit from such disobedience of his instructions. The rejoinder distinctly avers that the proceeds of the sale of the attached property received by him were less than the indebtedness for which the attachment was sued out exclusive of the note for $5,000, and, therefore, shows that he received no actual benefit from the taking of judgment on said note, except the mere existence of said judgment, which, in the rejoinder, he remits and discharges to the extent of said $5,000 and interest. We are of the opinion the rejoinder was a complete answer to the second, third and fifth replications, in so far as they set up the facts alleged therein as a ratification by defendant of the uses to which the bill sued on was applied.

But this rejoinder was no answer to the same facts set up in the fourth replication by way of estoppel, and the facts alleged in said replication, if true, effectually preclude defendant from asserting any defense based upon the facts that the bill sued on was accepted by him for the accommodation of McKenzie for a special purpose, and that it had been diverted from the uses contemplated with the knowledge of plaintiff. We reach

this conclusion, however, not because the replication shows by direct averment that the transaction between defendant and McKenzie was an exchange of the former's acceptance for the latter's note, but because they show by legal inference that the very act of defendant in attempting to collect the amount of McKenzie's note, by suing out the attachment before his acceptance became due, whether or not he had knowledge at the time that the bill had been diverted, was a recognition by conduct of the fact that McKenzie was his debtor by reason of said note, absolutely, and independently of the latter's failure to meet the acceptance when it should become due, and that he was likewise the plaintiff's debtor. When parties exchange negotiable notes or bills executed by them, whether by way of accommodation, or for the purchase of such paper, the paper given forms a sufficient consideration for that received, and neither is accommodation paper. Each instrument constitutes an independent contract and creates an absolute debt.—2 Rand. Com. Paper, §§479, 480; 1 Amer. & Eng. Encyc. of Law, (2d ed.), 338 and notes. But neither the fourth nor the fifth replication shows, with sufficient clearness to meet the requirements of pleading, that the transaction between defendant and McKenzie was an exchange of the negotiable paper of each. The fact that McKenzie's note was made to mature at an earlier date than the bill accepted by defendant, and that defendant sued on said note before the maturity of his acceptance, are persuasive of this theory, but they are not conclusive in construing the pleading. In the fourth replication it is alleged that the note was given "in consideration of and to secure him for said acceptance," and it is well settled that the giving of security to the accommodation party for the loan of his credit does not prevent the paper from being accommodation paper.—1 Am. & Eng. Encyc. of Law, (2d ed.), 337. The fifth replication avers that the note was given "in consideration of said acceptance," but this was not sufficient to show that the purpose of the parties was to exchange their negotiable paper. The bill sued on, so far as anything appears to the contrary in the pleadings, was accepted by defendant for the accommodation of McKenzie, but for all practical purposes of defense

its character as accommodation paper ceased the moment that defendant asserted the right to treat McKenzie as his absolute debtor, before the maturity of the acceptance, by suing on the note given to indemnify him against loss he might incur by reason of his acceptance. Such conduct was entirely inconsistent with the theory of the defense set up by the pleas. It was consistent only with the theory that McKenzie was his absolute debtor by reason of the note, at the time of the suit thereon, either because the original transaction was an exchange of their negotiable paper, or because of some subsequent agreement between the parties; and he clearly could not treat McKenzie as his absolute debtor without, at the same time, acknowledging his own indebtedness on the bill either to McKenzie or to the holder through McKenzie. One who has made a choice between two inconsistent steps or courses of action is confined to that chosen, and is estopped to assert any right or claim any benefit growing out of or based upon the other. When Henderson sued McKenzie on the note he estopped himself from saying, in a suit by McKenzie for the non-payment of the bill, that he accepted the bill for the mere accommodation of McKenzie, because, as we have seen, his action was consistent only with the theory that the note was given in exchange for the acceptance, thereby preventing the latter from becoming accommodation paper, or that, by a subsequent understanding between the parties, they agreed to stand in a changed relation, different from that originally created by the transaction, and to treat the respective instruments as evidence of the assumption by each party of independent and absolute obligations. *Dewey v. Bell,* 5 Allen (Mass.) 165; *Hooker v. Hubbard,* 97 Mass. 175. And whatever benefit the estoppel would work in favor of McKenzie can be claimed also by the plaintiff in this action; for while, generally speaking, a stranger can not take advantage of an estoppel, it binds and runs in favor of parties and privies alike, and the relation of privity may be said to exist between plaintiff and McKenzie; the former succeeding to the position of the latter with respect to the subject of the estoppel. It is entirely immaterial, in so far as it affects the question of estoppel, that the defendant, at

the time he sued out the attachment, was ignorant of the fact that the bill had been diverted, or that, after having acquired knowledge of the fact, he instructed his attorney not to take judgment on the note. It was the act of suing out the attachment, thereby asserting his right to treat McKenzie as his absolute debtor on said note, that worked the estoppel against the defendant. Having elected to assert this right, the subsequent discovery of a probable defense to this action based only on a theory entirely inconsistent with that upon which the right was asserted, and the instructions to his attorney not to take judgment on the note, can not release him from the effect of his election, so far as to enable him to take advantage of. the defense, when, notwithstanding his instructions, his attorney did take judgment on the note, and he, after knowledge of this fact, allowed it to stand as a binding judgment against McKenzie until the institution of the present suit, and the necessities of the case made by the pleadings forced him to offer to discharge it. The facts averred in the fourth original replication and those averred in the fifth replication as amended show, if not a technical estoppel, yet a quasi-estoppel by election, which effectually precludes the defense set up by the pleas and in the rejoinder.

Turning now to the evidence, we find that it fully supports all the material averments of these replications necessary to work the estoppel. It is shown by the evidence offered by the defendant that at the time defendant accepted the bill sued on, payable December 28, 1896, McKenzie gave him, as security therefor, his negotiable promissory note for a like amount, payable December 1, 1896, and that on November 25, 1896, defendant, before notice of the diversion, sued out an attachment against McKenzie claiming an indebtedness due by certain promissory notes, among which was that above mentioned, which attachment was levied on McKenzie's stock of goods, which were sold under order of court, in advance of judgment, and the proceeds of which, being less than the amount of the indebtedness exclusive of said note, were paid to defendant after he had acquired knowledge of the diversion of the bill. It is further shown that on January 4, 1897, defendant be-

came informed of the use to which said bill and the pro-
ceeds thereof had been applied, and on the same day,
after having acquired such information, he instructed
his attorney not to take judgment on said note, but on
February 15, 1897, a complaint was filed in said attach-
ment cause, claiming the amount of said note with
others, and on February 18, 1897, judgment was ren-
dered in favor of this defendant for the amount
claimed, including said note, which judgment, at the
time of the trial, was still standing as a binding judg-
ment against McKenzie; and that on January 28, 1897,
defendant filed a sworn answer to a bill in equity filed
by a creditor of McKenzie against this defendant and
McKenzie, seeking to assail said attachment proceeding
as fraudulent and collusive, in which answer he stated
that all the indebtedness for which said attachment was
sued out was *bona fide* and genuine. These facts fully
supported the replication, and overcame the defense set
up by the pleas, and, being undisputed, entitled plain-
tiff to the general charge in its favor, which was re-
quested and refused. This conclusion renders unneces-
sary a consideration of the other assignments of error.
The judgment is reversed and the cause remanded for
further proceedings in conformity to this opinion.

Reversed and remanded.