# Bunzel *v.* Maas & Schwarz.

*Action against Endorsers of Negotiable Promissory Notes.*

1. *Action against endorsers of notes; defenses; sufficiency of plea.* In an action against the endorsers of negotiable promissory notes, where the defendant avers in a special plea that the endorsements were made upon the promises of the maker to use said endorsements for the purposes of redeeming certain collaterals pledged for a debt of his to another party, promising to pay off an indebtedness for which the collaterals were pledged "by the use of said endorsements," and to deliver said collaterals to the defendants for their indemnity, and that the maker also promised to procure and deliver as further indemnity to the defendants the written guarantee of a certain firm, which said guarantee the maker falsely and fraudulently assured the defendants said firm had agreed to make, and that relying upon these promises and representations, the defendants, for the purposes stated and no other, endorsed said notes, and that the maker had fraudulently diverted the endorsements and failed to keep said promises,—such plea is insufficient as a defense and demurrable, on the grounds that it fails to state the facts constituting the fraudulent diversion by the maker, and that it does not appear from said plea that the defendants were not accommodation endorsers of said notes without restriction upon their use.

2. *Same; same; same.*—In such an action, where defendant alleges in a special plea that the endorsements were made for the accommodation of the maker upon his promise to use the notes with his creditor holding said collateral, and to deliver the collateral so taken up to the defendants for their indemnity, and that the maker did not use the notes with said creditor for the purpose for which they were endorsed and delivered, but fraudulently diverted them by discounting them with a third party at a usurious rate of interest, and then alleges that the plaintiff had not acquired the notes before maturity in the usual course of business, such plea does not present a defense to the action and is insufficient in that it contained no averments how the notes were to be used with said creditor, whether by discounting or otherwise, nor how the proceeds of the discount actually made were used.

3. *Depositions; admissibility of the examination in chief, without introduction of the cross-examination.*—Where a plaintiff in a suit has examined a witness in his behalf by deposition, he can offer in evidence the examination in chief, without, at the same time, offering the cross examination of said witness.

4. *Evidence; admissibility of secondary evidence of written instru-*

[Bunzel v. Maas & Schwarz.]

*ment.*—In an action upon notes, a question asking a witness to describe the notes referred to in certain letters attached as exhibits to the depositions of another witness, is not subject to the objection that the notes are the best evidence, where the notes inquired about are not the foundation of the action, since, in such case, coming up collaterally they need not be produced; but the evidence called for by such a question is irrelevant, because the transaction referred to related to matters without the issues of the case and between different parties.

5. *Same; statement of transactions made in the absence of plaintiff inadmissible.* — Evidence of statements made by one witness to another, in the absence of the plaintiff, who was the party sought to be affected thereby, is mere hearsay and *res inter alios acta,* and is not admissible in evidence; and such evidence can not even be used to contradict the answers of another witness, as to the same matters called forth by the party offering them.

6. *Same; admissibility of evidence as to interlineations in depositions.* It is proper to prove any fact relating to a deposition, which would be competent if the witness whose deposition is introduced was being examined orally; and in a case where the plaintiff sues as indorsee of a note, it is permissible to prove that certain interlineations in the plaintiff's deposition, supposed to have been made in his presence and with his assent, were in the handwriting of a third person from whom the plaintiff derived title to the notes sued on, and who was charged, by implication at least, with assisting plaintiff in a fraud in acquiring the notes; such fact having a tendency to show a relation and intimacy between the plaintiff and such party and shedding some light on the probability of the alleged fraud, and as also affecting the credibility of plaintiff's witness.

7. *Action against indorsers of note; defenses; charges to the jury.*—In an action by an endorsee against endorsers of negotiable promissory notes, where the defense interposed and relied on by the defendants is that they were accommodation endorsers, and that the endorsements were made upon the promise of the maker of said notes that, by the use of said endorsements, he would pay off an indebtedness for which collaterals were pledged, and deliver such collaterals to the defendants, and that he would deliver to the defendants a written guarantee of a certain firm as further indemnity, and that the maker had fraudulently diverted the endorsements and failed to keep said promises, charges should be given which instruct the jury that the plaintiff was entitled to recover, if the jury believe from the evidence that the plaintiff purchased the notes before maturity in good faith, without notice that the endorsements were without consideration or had been procured by fraud, or that the notes or the proceeds thereof had been misapplied, or that said notes had been dealt with in any manner which would impeach their validity, even though the purchases were at usurious rates.

8. *Same; same; burden of proof.*—In an action by an endorsee

[Bunzel v. Maas & Schwarz.]

against accommodation indorsers of negotiable promissory notes, where it is shown that the plaintiff purchased the notes before maturity, the burden is on the defendants to prove that the plaintiff, at the time he became the purchaser of the notes sued on, had notice of the breach of promises on the part of the maker, which was set up as a defense to the action, and which it was claimed invalidated the indorsements.

9. *Same; same; notice of maker's insolvency; charge to the jury.*—In an action by an indorsee against the indorsers of negotiable promissory notes, where the defense set up is that the defendants were accommodation endorsers and that the maker of said notes had fraudulently diverted the endorsements and failed to keep certain promises made to the defendants, a charge which instructs the jury that the fact that the plaintiff knew at the time he acquired the notes that the maker was insolvent, is no evidence of bad faith on his part, and does not charge him with *notice of facts which invalidated* the endorsements, is properly refused ; since the fact that the plaintiff knew that the maker of the notes was insolvent when he bought them, was proper evidence to be considered by the jury, together with other evidence to be considered in the case upon the question of actual purchase by the plaintiff.

10. *Same; same; charge to the jury.*—In an action by an endorsee against the endorsers of negotiable promissory notes, where the defendants set up that the plaintiff was not a *bona fide* purchaser for value without notice, and there is some evidence tending to impeach the conclusion that the plaintiff paid anything for the notes, it is a question for the jury to determine whether or not the plaintiff was a *bona fide* purchaser or a formal holder for other persons, and the general affirmative charge is properly refused.

11. *Same; same; charge to the jury.*—In an action by an endorsee against endorsers of negotiable promissory notes, where the defense interposed and relied on by the defendants is that they were accommodation endorsers, and that the endorsements were made upon the promises of the maker of said notes that, by the use of said endorsements, he would pay off an indebtedness for which collaterals were pledged, and deliver such collaterals to the defendants, and that he would deliver to the defendants a written guarantee of a certain firm as further indemnity, and that the maker had fraudulently diverted the endorsements and failed to keep said promises, a charge to the jury which assumes that the sale of the notes to any other persons than the holders of the collaterals, which were agreed to be delivered to the defendants, would be a fraudulent diversion of the notes and a breach of the agreement upon which the endorsements were obtained, is erroneous and should not be given ; since, if the proceeds from the sale of the notes were used in redeeming the collaterals, and the collaterals were delivered to the endorsers pursuant to the agreement, the mere fact of the sale of the notes to another than the pledgee of the collaterals would not constitute a fraudulent conversion of the notes and a breach of the agreement upon which the endorsements were obtained,

[Bunzel v. Maas & Schwarz.]

APPEAL from the City Court of Selma.

Tried before the Hon. J. W. MABRY.

This was a suit brought by the appellant, J. Bunzel, against the appellees, Maas & Schwarz; and counted upon six promissory notes for $500 each. The notes were executed by I. L. Levy. The notes were executed on February 24, 1892, and were payable to the appellees at the Commercial Bank of Selma, on different and specified days, from the 20th of September, to the 25th of October, 1892, and endorsed in blank by the appellees.

Sixteen pleas were filed by the defendant. The plaintiff's demurrers were sustained to pleas numbered 2, 3, 4, 5, 6, 7, 8, 9, 11, 12 and 16. The demurrers to pleas numbered 10 and 15 were overruled. Plea numbered 1 was the general issue. The substance of pleas 10 and 15 is sufficiently stated in the opinion. Plea numbered 13 sets up that the notes were without consideration and were endorsed by the defendants for the accommodation of Levy, and then avers that Levy discounted the notes with bankers in Alabama at a usurious rate of interest, and the failure of Levy to use the funds derived from said notes for the purposes agreed on, and further that the plaintiff did not become the holder or owner of said notes for value before maturity. Plea numbered 14 is substantially the same as the 13th plea, except that it does not aver failure to use the funds for the purposes agreed on, but avers that the plaintiff never was the legal holder of said notes for value before maturity.

In the plaintiff's third replication to the 10th plea, he denied notice of any of the infirmities of said notes, and sets up purchase for value and in good faith before maturity. The defendant took issue on this replication. In the 4th replication to the 13th and 14th pleas, the plaintiff alleged that he purchased the notes sued on in good faith for value and before maturity, and upon this replication the defendant took issue. In the 2d replication to the 15th plea, the plaintiff alleges that he purchased the notes sued on in good faith and for value before maturity, and upon this replication the defendant took issue. The cause was tried upon these issues.

The following facts were shown by the evidence: At the time these notes were executed, they were endorsed by the defendants and delivered to said I. L. Levy, and a few days thereafter he in turn delivered them to one

Louis J. Adler, of Uniontown, with the understanding that Adler should sell them, and apply $1,000 of the proceeds in part payment of a debt Levy owed Adler's employers, and pay over the remainder of the proceeds to Levy. In pursuance of this understanding, Adler, on February 29th, sold said notes to J. Marx & Co. of Demopolis, and carried out his agreement with Levy. In less than a month after this transaction, Levy failed in business. In August following, Marx sold said notes to M. L. & C. Ernst, of New York. Early in September, before any of said notes fell due, M. L. & C. Ernst sold the notes to plaintiff, also of New York. All these sales were made without any endorsement of the notes by the parties selling them, and the notes in each instance were sold for cash at a greater rate of discount than eight per cent. per annum. It was shown by the evidence that before and at the time of the execution and endorsement and delivery to Levy of said notes, Levy promised and agreed to use the notes in redeeming collaterals of a greater amount which he had with Lehman, Durr & Co. of Montgomery, and to turn said collaterals over to defendants, to cover his indebtedness to them and to S. Maas & Co., and to indemnify defendants against liability on the endorsements ; that at the time, Levy promised to procure and deliver to defendants the guarantee of Steiner Bros., of Birmingham, against such liability ; and that defendants never received said collaterals or guarantee.

The other facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe from the evidence that the plaintiff before maturity of any of the notes sued on, at the plaintiff's place of business in the city of New York, in good faith, bought of M. L. & C. Ernst the said six promissory notes indorsed in blank by the defendants in their firm name and paid the sum of twenty-nine hundred and sixty and 89–100 dollars therefor, without notice that the endorsements were without consideration, or had been procured by fraud, or that the notes or the proceeds thereof had been misapplied, or that said notes

had been dealt with in any manner which would impeach their validity, then the verdict should be in favor of the plaintiff.''   (5.)   ''The fact, if it is a fact, that the plaintiff knew, at the time he acquired the notes sued on, that I. L. Levy was insolvent, is no evidence of bad faith on the part of the plaintiff, and does not charge him with notice that the endorsements were without consideration, or had been procured by fraud, or that the notes or the proceeds thereof had been misapplied, or that the notes had been dealt with in a manner which would impeach their validity. ''   (6.)   " If the jury believe from the evidence, that the plaintiff, before the maturity of any of the notes sued on, at the plaintiff's place of business in the city of New York, in good faith, bought of M. L. & C. Ernst the said six notes endorsed in blank by the defendants in their firm name, and paid the sum of twenty-nine hundred and sixty and 89–100 dollars therefor, without notice that the endorsements were without consideration, or had been procured by fraud, or that the notes or the proceeds thereof had been misapplied, or that said notes had been dealt with in any manner which would impeach their validity, then the verdict should be in favor of the plaintiff; and the burden is upon the defendants to prove that the plaintiff, at the time he became the holder of the notes sued on, had notice that the endorsements were without consideration or had been procured by fraud, or that the notes had been dealt with in a manner which would impeach their validity.''   (7.)   "If the jury believe the evidence, they must find the issues in favor of the plaintiff.''

The court at the request of the defendants, gave to the jury the following written charges, to the giving of each of which the plaintiff separately excepted :    (2.)   "That if the jury believe from the evidence that the endorsements of the defendants were obtained by I. L. Levy for the purpose of being used with Lehman, Durr & Co., to take up collaterals which Levy had deposited with Lehman, Durr & Co., as security for money which Levy owed them, and that Levy then and there promised defendants to so use said notes and to deliver said collaterals to defendants to indemnify them against liability on said endorsements and also to secure other debts which the said Levy owed to Maas & Schwarz; and if

[Bunzel v. Maas & Schwarz.]

the jury further find from the evidence that said Levy received said six notes so endorsed from Maas & Schwarz for said purpose and on said promise, and fraudulently diverted said notes from the purpose for which they were intended, and through his agent Louis Adler discounted said notes to J. Marks & Co. at Demopolis, in this State, for the sum of $2,773, and no more, then the said Jacob Marks & Co. obtained said notes at a usurious rate of discount and were not *bona fide* holders of said notes. And if the jury further find from the evidence, (in addition to the matters above supposed), that since said Jacob Marks & Co. received said notes the said notes have never passed into the hands of a *bona fide* holder for value, then the plaintiff can not recover." (3.) "That although notes payable in bank are governed by mercantile law and are valid in the hands of a holder, in good faith, for value and before maturity, even if obtained by fraud, or fraudulently diverted from the purpose for which they were made and intended, still this rule applies only in favor of the holder of such notes, after such notes have passed into the hands of a holder in good faith, for value and before maturity." (4.) "That as the jury are the exclusive judges of the credibility of witnesses, they are not bound to believe the evidence of any witness, if from other evidence in the case they have cause to believe, and do believe, that the evidence of such witness is not true."

There were verdict and judgment for the defendants. The plaintiff made a motion for a new trial, which was overruled by the court, and to this ruling the plaintiff duly excepted.

The appeal is prosecuted by the plaintiff, who assigns as error the several rulings of the trial court to which exceptions were reserved.

SATTERFIELD & YOUNG and MALLORY & McLEOD, for appellants.—1. Plea No. 10 alleges fraud without stating the facts constituting it; is contradictory in stating that there was no consideration, and then stating the consideration; and, taken more strongly against the pleader, shows an unrestricted accommodation endorsement.—3 Brick. Dig., 510, § 31; *Connerly v. Planters &c. Ins. Co.*, 66 Ala. 432; 1 Dan. Neg. Instr., §§ 790-1; *Wildsmith v. Tracy*, 80 Ala. 258. Plea 15 alleges as a legal

conclusion that plaintiff did not acquire the notes in the usual course of business when the facts should have been stated.—3 Brick. Dig., 510, § 31; 1 Daniel Neg. Instr., § 770.

2. The written charge requested by plaintiff and numbered 1, stated a complete answer to the defense set up, and was in strict conformity with replication 3 to plea 10, replication 4 to pleas 13 and 14, and replication 2 to plea 15, on which defendants took issue, and on which the case was tried.—*Hamner v. Pounds*, 57 Ala. 348; *Moore v. Robinson*, 62 Ala. 537; *Winter v. Pool*, 100 Ala. 503; *M. & E. R. Co. v. Chambers*, 79 Ala. 342; 27 Amer. & Eng. Encyc. of Law, 915, note 3; 1 Daniel Neg. Instr., § 780, note 1.

3. The 5th charge requested by the plaintiff should have been given. The buying of the notes by plaintiff, after he knew that the maker was insolvent, was not such gross negligence as to be evidence of bad faith.— *Wildsmith v. Tracy*, 80 Ala. 258; *Lane v. Krekle*, 22 Iowa 399; *Clark v. Thayet*, 105 Mass. 216; *Nightingale v. Wetherington*, 15 Mass. 261. The written charge requested by plaintiff, numbered 6, stated a complete answer to the defense set up, and was in strict conformity with replication 3 to plea 10, replication 4 to pleas 13 and 14, and replication 2 to plea 15, on which defendants took issue, and on which the case was tried and said charge placed the burden of proving notice of infirmity on defendants, where it belonged.—*First Nat. Bank v. Dawson*, 78 Ala. 67; *Johnson v. Hanover Bank*, 88 Ala. 271.

4. The court erred in refusing to give the charge on the effect of the evidence, requested in writing by plaintiff, and numbered 7.—*Scarbrough v. Malone*, 67 Ala. 570; *Hamilton v. Vought*, 34 N. J. L. 187; 1 Daniel Neg. Instr., § 775.

PETTUS & PETTUS and PITTS & PITTS, *contra.*—1. The court did not err in overruling demurrer to plea number 10. This plea sets out the facts showing that the endorsements were accommodation endorsements with restrictions, then avers the fraudulent diversion of said endorsements. The diversion was in using the endorsements for a purpose different from that for which they were made; the facts are set out showing that

the endorsements were used, and not used for the purpose for which they were made. This being a negative fact, the simple statement that they were not so used was the only fact that could be stated, unless the plea set out how and with whom and for what the endorsements were used. These facts may not have been known to the defendants, and these were facts which could be obtained only through the plaintiff. The plea sets out facts showing that the diversion was fraudulent. All the facts presumed to be within the knowledge of defendants are set out. All the particular facts and circumstances which constitutes the fraud need not be minutely stated. General averments from which, unexplained, a conclusion of fraud arises, are sufficient. *Burford v. Steele*, 80 Ala. 147; *State ex rel. v. Cobb*, 64 Ala. 147; *Perry Ins. & T. Co. v. Foster*, 58 Ala. 520. The plea alleges notice to the plaintiff of the circumstances and conditions and restrictions of the endorsements before the purchase of said notes.—*First Nat. Bank v. Dawson*, 78 Ala. 67; *Gilman v. R. R. Co.*, 72 Ala. 566; *Marks v. First Nat. Bank*, 79 Ala. 550; 1 Brick. Dig., 276, § 356.

2. The demurrers to plea No. 16 were properly overruled. The court did not err in overruling plaintiff's objection to the question: "Describe the notes referred to in said letters?" The notes referred to were not the foundation of the suit, and their production was not required.—3 Brick. Dig., 439, § 486; 1 Brick. Dig., 856, § 753; *Wollner v. Lehman Durr & Co.*, 85 Ala. 274; *Howell v. Carden*, 99 Ala. 100.

8. A note or bill which, in the hands of the holder is a valid debt, may be bought or sold as any other chattel at its real or supposed value, and the transfer of such a bill or note at a discount beyond the legal rate of interest is not usurious.—*Capital City Ins. Co. v. Quinn*, 73 Ala. 558. But if a bill or note be made for the purpose of raising money on it, and it is discounted at a higher premium than the legal rate of interest, and where none of the parties whose names are on it can, as between themselves, maintain a suit on the bill when it becomes mature, provided it had not been discounted, then such discounting would be usurious and the bill would be void. The notes were made by I. L. Levy, payable to defendants, and only endorsed by defendants. Between

[Bunzel v. Maas & Schwarz.]

them the notes were not valid.    J. Marx & Co. were not *bona fide* purchasers.—*Capital City Ins. Co. v. Quinn,* 73 Ala. 558 ; *Saltmarsh v. Tuthill,* 13 Ala. 390 ; *Carlisle v. Hill,* 16 Ala. 398.    A note to be subject of sale must have had a pre-existing vitality.

4.    Under all the evidence J. Marx & Co. were not *bona fide* holders of said notes.—*Capital City Ins. Co. v. Quinn,* 73 Ala. 558.    And if the notes have never passed into the hands of a *bona fide* holder for value, then the plaintiff was not entitled to recover.—*Saltmarsh v. Tuthill,* 13 Ala. 390 ; *Saltmarsh v. B. & M. Bank,* 14 Ala. 668 ; *Carlisle v. Hill,* 16 Ala. 398.

BRICKELL, C. J.—This suit was brought by appellant, as the holder and owner of six negotiable promissory notes, for $500 each, which were made on the 24th of February, 1892, by I. L. Levy, and endorsed by the appellees, who were sued as such endorsers.

1.    The tenth plea alleges that the endorsements were made without consideration, but at once qualifies this statement by averring that they were made upon the promise of the maker to use said endorsements for the purpose of redeeming certain collaterals pledged for a debt of his to another party, promising to pay off the indebtedness for which the collaterals were pledged "by the use of said endorsements," and to deliver the collaterals to appellees for their indemnity.    That the said Levy also promised to procure and deliver as further indemnity to the defendants for their endorsements, the written guarantee of Steiner Bros. of Birmingham, "which said guarantee the said I. L. Levy then and there falsely and fraudulently assured these defendants, the said Steiner Bros. had promised and agreed to make."    The plea then alleges that relying upon these promises and representations for the purpose stated and no other, they endorsed said notes, and that Levy fraudulently diverted the endorsements and failed to keep said promises.    The plea was demurred to on the ground that it alleges that Levy fraudulently diverted the endorsements, without stating the facts constituting the supposed fraud.    And, on the further ground that it does not appear from the plea that the defendants were not accommodation endorsers of said notes without restriction upon their use.    The demurrer was improperly

overruled. It does not appear from the plea how the endorsements were to be used in redeeming the collateral referred to therein; whether by using the proceeds of a discount of them in paying the debt for which the collaterals were pledged, thereby redeeming them; or by a transfer of the notes to the holder of the collaterals in substitution of the debt, thereby inducing a surrender of them. If the former case, it is obvious that a discount of the notes was contemplated, and the promise would relate only to the use of the proceeds of the discount, not affecting the purchaser of the notes, not having notice of an intention to misapply the proceeds. And the plea rather indicates that the notes were to be sold, since it alleges that the creditor holding the collateral was to be paid; the words being, "promised these defendants to pay off said indebtedness to said Lehman, Durr & Co. by the use of said endorsements." If it was the intention of the pleader to prove in defense, that the notes were not to be discounted, but were to be transferred only to the creditor holding the collaterals, he should have left no doubt about the fact, by averring distinctly what the agreement was upon which the endorsements were made. As the plea stands, it is open to both of the objections mentioned in the demurrer. Construing the plea, as we must in this case, most strongly against the pleader, it does not deny the right to sell the notes, but only sets up a breach of promise in the use of the proceeds, which would not bar a recovery by the holder of the notes, not having notice of the intention to misapply them.

2. The fifteenth plea alleges the endorsement for accommodation of Levy and upon his promise to use the notes with the creditor holding the collaterals referred to in the tenth plea, and upon his promise to deliver the collaterals so taken up to the endorsers for their indemnity, and avers that Levy did not use the notes with said creditors for the purpose for which they were endorsed and delivered, but fraudulently diverted them by discounting them with J. Marx & Co. at an usurious rate of interest. The plea then alleges that the plaintiff did not acquire the notes or either of them before maturity in the usual course of business. These are the substantial averments of this plea. It will be observed that there is no averment how these notes were to be

[Bunzel v. Maas & Schwarz.]

used with Lehman, Durr & Co., whether by discount or otherwise ; nor is there any averment how the proceeds of the discount actually made were used. They may have been used to take up the debt with Lehman, Durr & Co., thereby redeeming the collaterals which the endorsers were to have for their indemnity. And all this may have been done and the collaterals actually delivered to defendants, so far as any averment in the fifteenth plea is concerned. It is obvious the facts stated in this plea form no defense to the action. It may be true in all its averments, since the substance of the agreement averred is that the notes should be discounted with Lehman, Durr & Co. and the proceeds used to take up the collaterals to which it refers. If the discount was with a third person and the proceeds used with Lehman, Durr & Co. for the purpose named, and effecting a redemption of the collaterals for delivery to the defendants, there would be no cause of complaint. And it does not appear from the plea but that all this was done, including the delivery of the collaterals to defendants. As this plea is clearly deficient in substance the demurrers thereto should have been sustained.

3. The plaintiff offered in evidence the examination in chief of a witness examined by deposition in his behalf. The court required the plaintiff to introduce and offer at the same time the cross-examination. We think this was error. A deposition is a simple substitution for an oral examination in which the cross-examination is called out by the act of the party cross-examining. A party cross-examining does not make the witness his by a cross-examination. He may impeach him by all the modes open to him notwithstanding the cross-examination. The examination by deposition and the offering of the testimony in such case must stand in all respects as an oral examination.—*Van Horn v. Smith*, 59 Iowa, 142 ; *Converse v. Meyer*, 14 Neb. 190 ; *Cellatly v. Lowrey*, 6 Bosw. 113 ; *Citizens Bank v. Rhutasel*, 67 Ia. 316 ; *Herring v. Skaggs*, 73 Ala. 446.

4. The fourth assignment of error was an objection by plaintiff to a question put by defendants, asking a witness to describe the notes referred to in certain letters attached as exhibits to the deposition of M. L. Ernst. The question was objected to on two grounds : that the evidence was irrelevant, and, second, that the notes

themselves were the best evidence. The question was not open to the second ground of objection, because the writing not being the foundation of the suit, but coming up collaterally, is not required to be produced.—1 Brick. Dig. 856, § 753 ; 3 Brick. Dig. 439, § 486. But it seems that the evidence called for was clearly irrelevant, since the transaction referred to related to matters without the issues of this case and between different parties. The objection, therefore, should have been sustained.

And for the same reason the objections to the statements made by Marks to the witness Maas should have been sustained. The plaintiff was not present and the direct assertion or admission by Marks of having an interest in the notes could not affect the plaintiff whose rights were then fixed. It was hearsay and *res inter alios acta*, and was not good to contradict the answers of another witness as to same matters called forth by defendant, since being irrelevant and collateral matter no issue can be raised on it. The party must be content with the reply to his first inquiry in such case.—1 Green. Ev., § 449 ; 2 Brick. Dig. 549, § 125.

5. We think there was no error in allowing proof that certain interlineations in the deposition of the plaintiff were in the handwriting of Ernst, one of the parties from whom the plaintiff derived title and who is charged, by implication at least, in assisting the plaintiff. It was a transaction supposed to have taken place in the presence of the plaintiff and to have received his assent, and tended to show the relation and intimacy between the parties and to heighten the probability of the alleged fraud in putting the notes in the hands of the plaintiff, and it reflected light upon matters affecting the credibility of the witnesses relied on by the plaintiff. The evidence of a witness upon the stand who has taken or received aid or suggestion may not be excluded for that reason alone, but the fact is proper to be shown so as to be used for all legitimate purposes ; and so we think it proper to prove any fact relating to a deposition which would be competent in the case of a witness being examined orally.

6. The charges numbered one and six asked by the plaintiff and refused by the court, we think should have been given. They stated a complete answer to the defense set up in the tenth and other pleas, which the

[Bunzel v. Maas & Schwarz.]

plaintiff was required to take issue upon or to reply to, and were in strict conformity to the replications. We have seen that the pleas did not inhibit a sale of the notes though made at usurious rates, but based the defense upon notice to the plaintiff of the facts set up in the pleas which related to promises made by Levy and not kept. The charges asked practically affirmed that if the plaintiff bought the notes, as the pleas concede might be done, before maturity and for value without notice of any of the matters set up in defense in the pleas, plaintiff was entitled to recover. It is evident that all a party has to do is to answer fully pleas which have been held good against his objection. If the defendants force the plaintiff to take issue upon bad pleas, the plaintiff is entitled to recover upon a full answer to such pleas. The charges in the case, substantially asked the court to instruct the jury that if the evidence did not sustain the pleas, the plaintiff was entitled to recover. The right of the plaintiff to recover as far as the pleas were concerned was not affected by the fact of usury in the first or other sales of the notes, since as we have seen, the pleas contemplated a conversion of the notes into cash, a fact which must precede the breaking of promises relating to the disposition of the proceeds. In a case of this kind, therefore, a purchaser for value before maturity without notice, though at usurious rates, could be affected by no defense, except that of usury, duly pleaded and to the extent allowed in such cases.

Having held that the demurrers to pleas ten and fifteen should have been sustained, it is deemed unnecessary further to consider the propriety of the charges based upon the replications.

7. The court properly refused the fifth charge asked by the plaintiff. The fact that the plaintiff knew that the maker of the notes was insolvent when he bought them, was proper evidence to be considered by the jury along with the other evidence upon the question of actual purchase by the plaintiff.

8. The court properly refused to give charge seven requested by the plaintiff. There was some evidence tending at least to impeach the conclusion that the plaintiff had paid anything for the notes; and it was, therefore, a question for the jury under all the facts of

[Forst v. Leonard, *et al.*]

the case to determine whether or not plaintiff was a purchaser or a formal holder for other persons.

9.  The second charge asked by the defendant and given by the court should have been refused.  It assumes that a sale of the notes to any other person than Lehman, Durr & Co., though the proceeds had been used in redeeming the collaterals held by them, and though the collaterals had been delivered to the defendants in pursuance of the agreement, would be a fraudulent diversion of the notes and a breach of the agreement upon which the endorsements were obtained, which we have above seen is an incorrect view of the transaction.

For the errors noticed, the cause is reversed and remanded.