(85 South. 586)

DESHAZO v. L. & E. LAMAR. (6 Div. 610.)

(Court of Appeals of Alabama. Jan. 13, 1920.
Rehearing Denied April 6, 1920.)

1. BILLS AND NOTES ☞369 — BONA FIDE
HOLDER MAY RECOVER, THOUGH NEGOTIA-
BLE PAPER WAS DELIVERED WITHOUT COM-
PLIANCE WITH CONDITIONS.

A bona fide holder of a·negotiable instru-
ment may recover, though it was deposited with
a person to be delivered on the happening of a
certain event or the fulfillment of a certain
condition, which event never happened or con-
dition has never been fulfilled, for the maker
in such a case is estopped to deny the delivery;
his .act having permitted the instrument to get
into circulation.

2. BILLS AND NOTES ☞497(2) — COMMON-
LAW RULES AS TO BURDEN OF PROOF,
WHERE FRAUD IS SHOWN, NOT CHANGED.

The Negotiable Instruments Law did not
change the common-law rules as to burden of
proof, where fraud is shown, or where the title
of the person negotiating the instrument is
defective.

3. BILLS AND NOTES ☞497(5)—ESCROWS ☞
14(1) — WHERE CHECK WAS DELIVERED
WITHOUT COMPLIANCE WITH CONDITION, IT
HAS NO LEGAL INCEPTION — HOLDER HAS
BURDEN OF PROVING BONA FIDE PURCHASE.

Where a check was deposited, to be deliv-
ered to a vendor of land on his delivery of good
abstract, etc., and the depositary delivered it
without compliance with agreement, the check
had no legal inception or valid existence as
such in the hands of the vendor, and one re-
ceiving it from the vendor has burden under
Code 1907, § 5014, of proving that he acquired
title as holder in due course.

4. BILLS AND NOTES ☞337—ESSENTIALS TO
PROVE THAT PARTY WAS BONA FIDE
HOLDER.

One claiming to be a bona fide holder of a
check must show, not only that the instrument
was complete and regular on its face, and that
he became the holder of it before it was over-
due, etc., as provided by Code 1907, § 5007,
subds. 1, 2, but that he took it in good faith
and for value, and at the time he had no notice
of defect of the title of the payee who negoti-
ated it to him.

5. BILLS AND NOTES ☞537(6) — WHETHER
PLAINTIFF WAS A BONA FIDE HOLDER OF
CHECK HELD FOR JURY.

Where the depositary, in violation of in-
structions, delivered to the vendor of land, a
check which was not to be delivered until de-
livery of abstract, etc., and the vendor negoti-
ated it to plaintiff a mercantile firm, the ques-
tion whether the firm was a bona fide holder
for value held, under the evidence, for the jury.

On Rehearing.

6. TRIAL ☞140(1)—QUESTION OF CREDIBILI-
TY OF WITNESSES FOR JURY.

Before the law all men are equal, and the
question of the credibility of the witnesses is
for the jury.

Appeal from Circuit Court, Jefferson Coun-
ty; Romain Boyd, Judge.

Assumpsit by L. & E. Lamar, claiming as
indorsees of a check, against Albert C. Desha-
zo. Judgment for plaintiffs and defendant
appeals. Reversed and·remanded.

Certiorari denied by Supreme Court. 204
Ala. 699, 85 South. 922.

W. T. Stewart and W. K. Terry, both of
Birmingham, for appellant.

The title of a person who negotiates an in-
strument is defective, when he obtains the in-
strument by fraud or other unlawful means.
Section 5010, Code 1907; 145 Iowa, 185, 123
N. W. 1000, 29 L. R. A. (N. S.) 638; 201
Ala. 197, 77 South. 723. Under the facts in
this case, the burden is on the holder to
prove that he or some other person under
whom he claims acquired the title as ·a
holder in due course. Section 5014, Code
1907; 189 Ala. 418, 66 South. 509; 11 Ala.
822; 202 Ala. 367, 80 South. 449; 7 Ala. 256;
3 R. C. L. 1075, and authorities supra; 200
Ala. 351, 76 South. 117. On these authorities
it is insisted that the judgment should be re-
versed.

Reese & Reese, of Selma, and Ivey Lewis,
of Birmingham, for appellee.

Counsel call especial attention to case re-
ported in 200 Ala. 578, 76 South. 936. The
affirmative charge was properly given for
appellee. 183 Ky. 47, 209 S. W. 505; 79
Ala. 816; Id. 586; sections 5007, 5010, 5011,
5012 and 5014. The plaintiff being a bona
fide purchaser for value, the burden was
still upon the defendant to show that plain-
tiff had notice of the defective check. 9 Ala.
App. 355, 63 South. 741; 109 Ala. 162, 19
South. 503; 189 Ala. 422, 66 South. 509; 202
Ala. 367, 80 South. 449; 8 Corp. Juris, 984,
989. See, also, 185 Ala. 221, 64 South. 82;
195 Ala. 175, 70 South. 723.

SAMFORD, J. The defendant, who re-
sided in Birmingham, Ala., went in person
to Selma, Ala., and contracted with one Tar-
ver for the purchase of 200 acres of land and
as a part of the trade, deposited with one
Johnson, a neighbor of Tarver, a check dated
November 5, 1917, and drawn on the Ameri-
can Trust & Savings Bank of Birmingham,
Ala., for $100, to be delivered to Tarver up-
on the delivery by Tarver to the attorney of
defendant an abstract of title and deed to the
land purchased, and upon the approval of the
title and deed to the land by defendant's attor-
ney, the check was then to be delivered and
cashed as part of the purchase money for the
land. In violation of the terms of the es-
crow agreement, and without the abstract of
title having been furnished, or deed to the
land tendered, Johnson delivered the check

to Tarver and sent a letter in response to a telegram of inquiry from defendant, postmarked November 9th, addressed to defendant at Birmingham, saying, "It's up to you and Tarver; I will have nothing else to do with it."

From this record the evidence is without dispute that Tarver had no right to the check, and in his hands its collection could not be enforced. The check, which was drawn on the American Trust & Savings Bank, was on November 9th presented at that bank, by the First National Bank of Birmingham, and payment refused, because defendant had ordered payment stopped. It was shown by the evidence that on November 6th Tarver negotiated the check to plaintiffs under the following circumstances. It does not appear from the record that plaintiffs or any member of that firm knew defendant, or his financial standing; but, on the contrary, it appears that they were entire strangers; that plaintiffs were engaged in the general merchandise business in Selma, but were not bankers; that plaintiffs knew Tarver, who lived about four miles from Selma, and had known him for 15 years, during which time Tarver had sometimes traded at plaintiffs' store, and also knew Johnson, the depositary; that Tarver was indebted to a brother of one member of the firm; that Tarver came to plaintiffs' store on November 6th, had the check with him, and said to Law Lamar, a member of plaintiffs' firm, that he wanted to pay C. L. Lamar (the brother) $100, and said he had a check. Tarver did not say what he wanted to pay the $100 for, or what it was to be credited on. Law Lamar did not know what Tarver was paying it for. Tarver had never paid money to these plaintiffs before this time. Law Lamar (the member of the firm) told Tarver to go to the bookkeeper, get the money on the check, which was done, the bookkeeper paying Tarver the money after he had been instructed so to do by Law Lamar. Tarver immediately brought the money to Law Lamar, and paid it to him for his (Lamar's) brother, giving a receipt therefor. Law Lamar immediately took the money back to the bookkeeper, instructing him to take it to the bank in Selma and deposit it to the credit of the brother, for whom it had been paid. The check was indorsed by Tarver, and then by plaintiff, and sent, not to plaintiffs' bank in Selma, but to plaintiffs' bank in Faunsdale, Ala., through the mail, and from there it went through regular channels for collection. It also appears from the indorsement on the check, the original of which we have before us, that immediately under the indorsement of Tarver the indorsement was first made, "For deposit to credit of L. C. Lamar [the brother]," and then changed to L. & E. Lamar; this indorsement being in the handwriting of the bookkeeper of plain-

tiff. There is no difference between counsel for appellant and appellee as to the law of this case, except as it may be applied to the facts.

[1, 2] A bona fide holder of a negotiable paper may recover, although it was deposited with a person to be delivered on the happening of a certain event or the fulfillment of a certain condition, which event never happened or condition has never been fulfilled. 8 C. J. 205, 760; Garrett v. Campbell, 2 Ind. T. 305, 51 S. W. 956. The case of Farley v. Baldwin, 201 Ala. 197, 77 South. 723, is not in conflict with the foregoing; it having been held in that case that the complainant was not a bona fide holder. This would not be such a delivery as to actually put the legal title in the indorsee, but the defendant would be estopped to deny a valid delivery in a suit by an innocent holder for value, for the reason that by his negligent act he had allowed the instrument to get into circulation. W. D. Cannon, Jr., v. Dillehay et al., 84 South. 549;[1] 3 R. C. L. 1025; Garrett v. Campbell, supra. Nor does the Negotiable Instrument Law change the rules of the common law, as to the burden of proof, where fraud is shown, or where the title of the person negotiating the instrument is defective. Downs v. Horton (Mo. App.) 209 S. W. 595; 3 R. C. L. p. 1041.

[3, 4] In this case, it appears from the record without dispute, that the check was turned over to Tarver, by Johnson the depositary, in violation of the terms of the escrow agreement, and hence no delivery of the check was ever made to Tarver, in accordance with the purpose and intent of the parties. Therefore, so far as Tarver was concerned, the check had no legal inception or valid existence as such. Cannon, Jr., v. Dillehay et al., supra; 3 R. C. L. p. 1025. This being the case, the burden was on plaintiff to prove that he acquired the title as a holder in due course. Code 1907, § 5014. To do this he must prove, in addition to subdivisions 1 and 2 of section 5007 of the Code of 1907, that he took it in good faith and for value and at the time he had no notice of any infirmity in the instrument or defect in the title of Tarver.

[5] From a reading of the evidence it is an easy matter for any one at all familiar with the law of negotiable instruments to reach the conclusion that Tarver not only came in possession of the check in breach of the terms of the escrow agreement, but that he realized it and was, when he negotiated it, making a careful and studied effort to place someone between him and the defendant, who could enforce the collection of the check, free from the equities and defense held by the defendant as against the check, while in his hands. In order to do this he

---

[1] Ante, p. 294.

did not go to a bank, where checks are usually negotiated and collected, nor yet to a' mercantile establishment, where he was dealing by account, but sought out a friendly merchant, whom he had known for 15 years, and with whom he had sometimes traded, but who did not know the defendant, nor his financial standing, and who did not know whether the check would be paid or not, and according to their statement the check was negotiated for its face value, without profit of any kind to the merchant; he assuming gratis the loss of interest during the time of collection, and of collecting the check on an unknown person in a distant city. Every act of Tarver and the plaintiff, while the check was being negotiated, may be looked to by the jury to see if the facts and circumstances indicate a conference as to the method of handling the check so as to accomplish the purpose of Tarver; and while the words in the conversation used in the negotiations, taken alone, might establish the bona fides of the transaction, the acts and circumstances, when taken in the light of common sense, common reason, and a common knowledge of the way business is done in this country, may be sufficient to prevent the jury from being reasonably satisfied from the evidence that the plaintiffs had carried the burden placed upon them by law.

The testimony of witnesses to a transaction, when undisputed, must be taken as establishing the facts testified to; but the circumstances and surroundings may be such, not only to cast suspicion, but, when considered in the light of common experience and human understanding, may amount to a' denial of the testimony given by the witnesses. Many illustrations might be given of this principle; but we deem it unnecessary to prolong a discussion of the evidence, in view of the fact that this case must be tried before a' jury, and we do not desire the conclusions here reached to affect the final conclusions of the jury. Suffice it to say the facts and circumstances, when taken and considered as a whole, present a question to be decided by a jury. Bunzel v. Maas & Swartz, 116 Ala. 68, 22 South. 568; Moore on Facts, vol. 1, §§ 573, 574. The court erred in giving the affirmative charge as requested *by the plaintiff, and for this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

On Rehearing.

In brief of counsel filed on application for rehearing, the insistence is made that the effect of the opinion of the court was to hold that some of the witnesses for plaintiff had lied. The court in its opinion said no such thing, meant no such thing, and such a conclusion on the part of counsel is unwarranted.

Counsel, in their zeal to present propositions to the court, should be careful not to charge the court unjustly with conclusions. not reached by it. There is in the opinion no decision or intimation that any witness has lied, or even evaded the truth. That question is not for this court to pass upon, but one for the jury, and it is for them to weigh and pass upon the credibility of the witness.

[6] Nor do we see ·the occasion for the impassioned statements, outside the record, calling this court's attention to the wealth and standing of plaintiffs, covering a long period of years. Certainly counsel would not urge that fact as a basis for a decision which would not otherwise be rendered. Before the law, all men are equal, and their testimony and acts, when presented in court, must stand the scrutiny and tests of legal principles. Juries pass upon the credibility of witnesses under instructions from the court, and in this case this court has not sought to invade this province. However, lest unwarranted inference may be drawn from illustrations given, the court modifies the opinion to the extent of striking out the illustrations of the principle stated.

We see no reason for changing the conclusions arrived at by the court, and therefore the application for rehearing is overruled.

Application overruled.