## SHELDON v. STAGG et al.
### No. 5515.

Court of Civil Appeals of Texas. Amarillo.

Feb. 15, 1943.

Rehearing Denied March 22, 1943.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Works & Brian, of Amarillo, Jas. W. Bassett, of Austin, and Lyman K. Arnold of Elkhorn, Wis., for appellees.

STOKES, Justice.

On July 30, 1929, J. C. Livingston and his wife, appellee, Carrie B. Livingston, of Elkhorn in Walworth County, Wisconsin, entered into a real estate sales contract with appellee, Sam W. Stagg, of Oldham County, Texas, by which they agreed to convey to him 329.54 acres of land located in Oldham County. The consideration to be paid by the grantee was the total sum of $7,000, of which $1,000 was to be paid in cash and the balance to be evidenced by a note in the sum of $6,000, due and payable on or before ten years after its date, bearing interest at the rate of six per cent per annum, the interest payable annually, the note to contain the usual acceleration of maturity and attorney's fees clauses. The contract, deed, and note were prepared by Allen Stagg, father of Sam W. Stagg, and forwarded by mail to J. C. Livingston with instructions to examine them and, if approved, to execute the deed and contract and return all of the papers to the First State Bank at Vega in Oldham County for the inspection of the grantee and the execution by him of the vendor's lien note. Three copies of the contract were prepared, and it provided that the deed would be placed in escrow with an unnamed bank, there to be held until Sam W. Stagg had paid $2,500 or more on the note. The First National Bank of Elkhorn, Wisconsin, was chosen as the depositary and its cashier acted for and on behalf of the Livingstons in returning the papers to the Vega bank for inspection. In his letter of transmittal, the cashier instructed the Vega bank to permit Mr. Stagg to inspect the papers and if they were in satisfactory form, to have him execute the note and contract, pay the $1,000 cash payment provided by the contract, have one copy of the contract placed of record in the Deed Records of Oldham County, and return the note, contract, and deed to the First National Bank in Elkhorn, Wisconsin, where they would be held in escrow until completion of the contract according to its terms. These instructions were complied with by the bank at Vega and the money and papers were returned to the bank in Wisconsin as instructed by its cashier. Within a few months thereafter, J. C. Livingston died and appellee, Mrs. Livingston, employed appellant, William A. Sheldon, an attorney of Elkhorn, to probate her husband's will and attend to other matters in connection with his estate. The relation of attorney and client between appellant and Mrs. Livingston continued until January, 1933, when Mrs. Livingston informed appellant she would not be in further need of his services. Some months thereafter appellant brought suit against Mrs. Livingston in the County Court of Walworth County, Wisconsin and recovered a judgment against her for $597.89, claimed by appellant as attorney's fees owing to him by Mrs. Livingston at the termination of the relationship between them.

The record shows that during the time appellant was acting as attorney for Mrs. Livingston, but without instructions from her and without her knowledge or consent, he procured possession of the deed, contract, and vendor's lien note and obtained the execution by Sam W. Stagg and his father, Allen Stagg, of another note in the sum of $650, payable to Mrs. Livingston which represented the delinquent interest on the $6,000 note. Appellant did not return the papers to the depositary, but retained possession of the deed, contract, and vendor's lien note and also the new note, and after procuring the judgment against Mrs. Livingston he caused an execution to be issued upon the judgment and had the sheriff levy upon the deed, contract, and two notes under a statute of the State of Wisconsin which permits the levy of execution upon current money of the United States and any evidences of debts circulated as money. The sale under execution was duly advertised, the papers sold by the sheriff, and bought in by appellant for the sum of $100.

After purchasing the deed, contract, and notes at the sheriff's sale, appellant filed suit in the District Court of Oldham County against Sam W. Stagg, his father, Allen Stagg, who it seems was interested

from the beginning in the purchase of the land, and Mrs. Livingston, in which he sought judgment upon the notes against the Staggs and for foreclosure of an alleged vendor's lien on the 329.54 acres of land against all of the defendants. By agreement the venue of the case was transferred to the District Court of Potter County where it was tried before the court without the intervention of a jury and resulted in a judgment for the defendants, appellees here, and denying appellant any relief. Appellant duly excepted to the judgment and perfected an appeal to this Court where he assails the same upon numerous grounds. His principal contention is that the notes sued upon were enforcible obligations as against Sam W. and Allen Stagg; that although the deed was to remain in escrow, appellee, Mrs. Livingston, held an equitable vendor's lien on the land; that the notes and lien passed to appellant by the execution sale, which was held October 25, 1937; and, therefore, the court erred in rendering judgment in favor of appellees and denying appellant any relief.

Section 272.25 of the statutes of Wisconsin provides: "Upon executions against property the officer shall levy upon any current money of the United States and shall pay and return the same without exposing it for sale, and he may also levy upon and sell any evidences of debt circulated as money, or a bond or other instrument for the payment of money which is negotiable or payable to the bearer or holder."

It was under this statute that appellant caused the sheriff of Walworth County, Wisconsin to levy upon, advertise, and sell under execution the deed executed by J. C. Livingston and wife, the contract executed by them and the appellee, Sam W. Stagg, and the $6,000 note executed by him, together with the $650 note executed by him and his father, Allen Stagg. As we have already said, appellant contends that the notes were enforcible obligations against the makers and although the deed was to remain in escrow, Mrs. Livingston held an equitable vendor's lien on the land, all of which passed to appellant by the execution sale, and he was therefore entitled to judgment on the notes and to a foreclosure of the vendor's lien. If appellant is correct in this contention, the court erred in rendering judgment against him and in refusing to foreclose the vendor's lien retained in the deed. However, we can not agree with appellant in this contention. As we have shown in the foregoing statement, the deed, contract, and note were all placed with the First National Bank, of Elkhorn, in escrow to be retained and held by the bank as depositary until Sam W. Stagg had paid $2,500 on the vendor's lien note. The $2,500 was never paid and the record does not show, nor does the appellant claim, that any agreement was ever made by the parties, nor was any instruction ever given to the depositary by any of them, to release the papers from the escrow agreement. The trial court found that the evidence did not reveal with certainty when, why, or how the papers, including the $6,000 note, went from the possession of the depositary to appellant, but that it occurred while the relationship of attorney and client existed between the appellant and the Livingstons, and that appellant would not have obtained possession of them had the relationship not existed. The court further found that Mrs. Livingston did not know of the change in the possession of the papers and that she did not give her consent thereto. While the contract of sale did not specifically provide that the note should be placed in escrow along with the deed and contract; yet, in transmitting the papers to the First State Bank at Vega, the cashier of the Elkhorn bank, who at the request of the Livingstons conducted the closing negotiations, in his letter instructed the Vega bank that when Mr. Stagg had examined the deed and found everything satisfactory and had executed the note and contract and paid the $1,000 cash payment, the papers should be returned to the Wisconsin bank, and the contract, note, and deed would be held in escrow for the completion of the contract. Allen Stagg, who conducted the negotiations throughout on behalf of his son, Sam W. Stagg, testified that a copy of the letter transmitting the papers to the Vega bank was sent to him and that the transaction was closed according to the contract and letter. Mrs. Livingston testified that she and her husband procured the cashier of the Elkhorn bank to conduct the closing negotiations with the Staggs and that he mailed or delivered to them a copy of the letter which he had written to the First State Bank at Vega. It is clear from the testimony that all of the parties to the transaction recognized the First National Bank of Elkhorn, Wisconsin, as the de-

positary of all the papers, including the $6,000 note, and that the note as well as the deed and contract were to be held by that bank in escrow pending the payment by Sam W. Stagg of $2,500 upon the principal of the $6,000 note.

█ The law is well established in this State and in the State of Wisconsin, as well as in practically every other jurisdiction in this country, that where an instrument is placed in escrow it can not become operative until the condition under which it is deposited has been complied with or the contingency agreed upon has happened. Wilcox v. Scallon, 144 Wis. 74, 127 N.W. 1007; Blue v. Conner, Tex.Civ.App., 219 S.W. 533; Calhoun County v. American Emigrant Co., 93 U.S. 124, 23 L.Ed. 826.

██ The record shows without dispute that the $2,500 which Sam W. Stagg was to pay on the $6,000 note, the payment of which constituted the condition of the escrow agreement, had not been paid. In fact, the payments that had been made thereon were insignificant and the depositary at Elkhorn therefore had no right to deliver possession of the note and other papers to appellant or anyone else. Even if Mrs. Livingston had consented to such delivery or instructed the bank to deliver the papers to appellant, in the absence of an agreement of all the parties to the transaction, the bank, as depositary, would have had no authority to do so. The testimony showed and the court found, however, that appellant procured possession of these papers without the consent or knowledge of any of the parties to the escrow agreement. The delivery was therefore unauthorized and wholly ineffective to give vitality to the note. Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S.W. 823; Spotts v. Whitaker, Tex.Civ.App., 157 S.W. 422; Zoerb v. Paetz, 137 Wis. 59, 117 N.W. 793; Everts v. Agnes, 4 Wis. 343, 356, 65 Am. Dec. 314. If the depositary delivered the papers to appellant as a matter of accommodation to him and to enable him to calculate past due interest and conduct negotiations with the Staggs on behalf of Mrs. Livingston while he was acting as her attorney, as seems likely from the testimony, the lawful possession was not in any sense changed, but the papers were still legally in escrow with the depositary and should have been promptly returned. Instead of returning them, however, appellant retained them in his office or

vault. This did not constitute a delivery of the note nor change its legal status in any sense, nor make of it an enforcible obligation as against the Staggs. Not having been delivered, but still being legally in escrow, the note was not such an evidence of debt as is authorized by the statute of Wisconsin to be the subject of a levy under execution. The statute designates only such evidences of debt as are circulated as money. Obviously, a note that has not been delivered but is held in escrow by a depositary pending the happening of a contingency is not in circulation as money. Until the condition was performed or the contingency had happened, the contract was executory and the note had no inception. Blue v. Conner, Tex.Civ.App., 219 S.W. 533; Davis v. Lyons, Tex.Civ.App., 274 S.W. 288; Deshazo v. L. & E. Lamar, 17 Ala.App. 392, 85 So. 586; Carpenter v. Carpenter, 141 Wis. 544, 124 N.W. 488; Thomas v. Watkins, 16 Wis. 549; Roberts v. McGrath, 38 Wis. 52; Swanke v. Herdemann, 138 Wis. 654, 120 N.W. 414.

█ Even in those jurisdictions where execution is permitted upon negotiable instruments, it is held that such instruments have no vitality and are therefore not subject to execution until they leave the hands of the makers and are delivered to the payees. Barham v. White, 171 Miss. 303, 157 So. 465; Beckett v. McCaslin, 161 Miss. 557, 137 So. 519. In the Barham case a county warrant had been issued, sealed, and detached from the warrant book ready for delivery to the payee, when it was levied upon under an execution, and the Supreme Court of Mississippi held that it was not subject to a levy under execution against the payee because it had no vitality until it left the hands of the county officer and was delivered to the payee.

█ Under the same statute under which appellant caused the levy to be made upon the note, he also attempted to have the sheriff levy upon and sell the deed and contract. Even if the delivery of these papers to the sheriff had been authorized or otherwise legal, no title to them passed under the levy and sale, because they were not included in the class of instruments designated by the statute of Wisconsin as being subject to levy and sale under execution.

█ What we have said refers principally to the $6,000 note that was placed in escrow by the parties to the transaction. The $650 note came into existence, accord-

ing to the testimony, by the unauthorized negotiations of appellant with Allen Stagg in which appellant induced Allen Stagg and Sam W. Stagg to execute a new note for the delinquent interest on the vendor's lien note. While this note was not placed in escrow with the other papers, it was procured without the instruction, knowledge, or consent of Mrs. Livingston, and when it was returned to appellant, instead of delivering it to her or placing it in escrow, he placed it in his vault and kept it there until he delivered it to the sheriff to be levied upon under the execution. Mrs. Livingston testified, without contradiction, that she did not request appellant to procure the additional note and that she knew nothing of it until long after it was executed. Under these conditions appellant was wholly without authority to deliver this note, as well as the other papers, to the sheriff for levy under the execution. We think it is obvious that he could not thus invest himself with any right or title to any portion of the obligation represented by either of the notes, nor of the vendor's lien retained in the deed.

Appellant presents a number of assignments of error and contentions involving questions other than those we have discussed, but we deem it unnecessary to discuss them for the reason that, in our opinion, the court would not have been warranted in rendering any judgment other than that which was rendered and that appellant was not entitled to recover anything by virtue of his suit. The judgment of the court below will therefore be affirmed.