**ALAMO LUMBER COMPANY, Appellant,**

v.

**LAWYERS TITLE INSURANCE CORPORATION, Appellee.**

No. 14733.

Court of Civil Appeals of Texas.

San Antonio.

March 19, 1969.

Rehearing Denied April 16, 1969.

Foster, Lewis, Langley, Gardner & Hawn, Emerson Banack, Jr., San Antonio, for appellant.

Alvin L. Huth, A. R. Sohn, San Antonio, for appellee.

KLINGEMAN, Justice.

Alamo Lumber Company, appellant herein, sued Lawyers Title Insurance Corpora-

tion, appellee, for damages in the amount of $25,503.84 allegedly resulting from appellee having wrongfully deprived appellant of real estate liens held by appellant as security for the indebtedness of a third person, Ben T. Davis. The trial court granted appellee's motion for summary judgment and entered judgment that appellant take nothing.

Appellant is engaged in the business of supplying materials to builders and maintains a lumber yard in Beeville, Texas. In order to induce builders to purchase materials from it, appellant often provides interim or construction financing for specified construction projects. During the spring of 1966, appellant agreed to furnish interim financing to Ben T. Davis, a contractor, for the purpose of constructing residences known as the "Parsons Project" and the "Galloway Project" on lands owned by Davis in Beeville, Texas. Davis, thereafter, gave appellant a note in the amount of $24,500.00, secured by deed of trust on the property on which the Parsons residence was being constructed, and a note for $33,-200.00, secured by deed of trust on the property on which the Galloway residence was being constructed. Portions of both of such notes and liens were assigned by appellant to national banks in Beeville, with the assigned portions being made the first or superior liens, and the retained portions being secondary or inferior to the assigned portions.

Appellee is engaged in the title insurance business and issued the mortgagee title policies to the permanent lenders on both the Galloway and Parsons projects. Alex F. Cox is a practicing attorney in Beeville, but also conducts an abstract business and is an issuing agent of title policies for appellee. In the fall of 1966, appellee issued a mortgagee title policy to First Savings Association of Corpus Christi on the property involved in the Parsons project, and a mortgagee title policy to First Federal Savings & Loan Association of Beeville on the property involved in the Galloway project, with Alex F. Cox being the issuing agent. On

September 21, 1966, Cox & Cox, Attorneys at Law, wrote Alamo Lumber Company, San Antonio, Texas, a letter signed by Alex F. Cox, with reference to "Lot 1, Block 3, Moser Subdivision, Virgil E. Parsons, and Lots 8 and 9, Block 3, Moser Subdivision, Charles T. Galloway," reading as follows:

"In connection with the above two items, we enclose you Releases to be signed and returned to us covering notes executed by Ben T. Davis.

Please execute the original Releases and return to us at once to be recorded and retain the enclosed copies of the Releases for your files."

There is no mention of appellee in such letter or any reference to title insurance. The release in connection with the Parsons project recited that $16,000 of the original $24,500 note and lien had been assigned to First National Bank of Beeville, but released the lien as to the subordinated portion thereof retained by appellant, while the release in connection with the Galloway project recited that $22,200 of the original $33,200 note and lien had been assigned to the Commercial National Bank of Beeville, but released the lien as to the subordinated portion retained by appellant. The releases were executd by Alamo Lumber Company and then mailed to Mr. Alex F. Cox, Attorney, Beeville, Texas, by K. H. Wiseman, Esq., office counsel for appellant in San Antonio, with a letter dated September 23, 1966, containing this notation: "If you need any information about the balance due us, you can get the information from Alamo Lumber Company, Beeville, Texas." Miss K. H. Wiseman testified by deposition that Cox was not authorized to file the releases for record without having been paid the claims that appellant was making at that time. Alex F. Cox used major portions of the disbursement funds sent to him by the permanent lenders to pay off the holders of the superior portions of the original notes and liens, and the remainder of such funds were used to pay subcontractors. No

part of such funds were paid to appellant who held secured second liens on the properties involved. On September 27, 1966, Cox recorded the release on the Parsons project without collecting the amount due appellant on same, despite the instruction by appellant when the releases were mailed to him. After learning that this release had been recorded without payment, appellant expressly directed Cox not to record the Galloway release. However, in disregard of such instruction, Cox recorded the release on the Galloway project on or about November 10, 1966. After appellant learned of such recordation, various conferences were held by some of appellant's officers and employees, including legal counsel, to determine its situation and a tentative decision was reached that by reason of the filing of the releases by Cox, appellant perhaps had no security for its indebtedness in the Parsons and Galloway projects. There was some discussion to the effect that there was a big question as to the value of the properties involved in the Parsons and Galloway projects, and that there probably would be court costs, attorney's fees, and other such things involved. As a result of such conferences, thereafter a new note was taken from Davis, dated November 15, 1966, in the amount of $44,416.80, representing an indebtedness of $6,651.16 on the Parsons project, an indebtedness of $18,-852.68 on the Galloway project, and an indebtedness of $18,912.96 on two other projects in which appellant and Davis were involved, Diebel and Lasiter, but which were unsecured. A new deed of trust was taken from Davis to secure the $44,416.80 note, on other property owned by Davis, consisting of several tracts. The original note executed by Davis on the Parsons and Galloway projects provided for 6½% interest, while the new note provided for 8% interest. On November 26, 1966, Davis executed another secured note to appellant, for $6,500, as additional collateral on the November 15, 1966 note. Subsequent to the execution of the November 15, 1966, note and deed of trust, foreclosures were had on some of the property covered in this deed

of trust, and as a result of such foreclosures and some direct payments made by Davis, appellant gave Davis credit for $15,122.61 on the $44,416.80 note, leaving a balance of $29,249.19. Some of the property covered by the November 15, 1966, deed of trust has not been foreclosed but the value of such remaining security is not ascertainable from the record.

Appellant asserts three alternative theories by which it is entitled to recover for the deprivation of its liens: (1) contract implied in fact, (2) contract implied by law, (3) negligent or intentional violation of instructions by an agent or trustee. Appellee's main contention is that the unauthorized filing of the releases for record did not release or deprive appellant of the liens held by it as security for the indebtedness of Ben T. Davis; that when appellant learned of such unauthorized filing of the releases it had a right to repudiate such act by appropriate proceedings to clear the record of any cloud upon its title, but appellant, with full knowledge of all the facts, chose to ratify such recording of the releases and to replace and substitute the released notes and liens by taking new notes and new security from Ben T. Davis, its debtor, and by such election appellant waived any right to recover damages against appellee, and has no cause of action against appellee.

Appellee additionally asserts that appellant did not have a cause of action for the face value of the liens; that it failed to exhaust other remedies available to it and that its suit was prematurely brought; that Alex F. Cox was the joint agent of appellant and appellee, and that in the absence of any showing that appellee authorized, colluded, conspired, or actively participated with Cox to defraud or harm appellant, appellee would not be liable for the tortious acts of the joint agent; and that appellant's cause of action is within the statute of frauds.

The trial court did not err in granting appellee's motion for summary judgment. Every contention of appellant is

bottomed on the false premise that appellee caused it to lose its liens. The unauthorized recording of such releases did not deprive appellant of the liens held by it as security for the indebtedness of Ben T. Davis. The releases were delivered to Cox with instructions and under the condition that they not be delivered until certain amounts owed appellant on such liens were paid. The releases did not become effective until such condition had been performed. 50 Tex.Jur.2d, § 7, p. 10; Sheldon v. Stagg, 169 S.W.2d 550 (Tex.Civ.App.—Amarillo 1943, writ ref'd n. r. e.); Halloran v. Fischer, 126 Conn. 44, 9 A.2d 290 (1939); 30A C.J.S. Escrows § 11, pp. 1001–1002; 28 Am.Jur.2d, § 24, p. 35. Thus it is clear that when appellant discovered the releases had been recorded without payment to it of the amount owing on such liens, it could have repudiated the act of the title company in recording such releases, in which event it could have recovered from the title company the necessary expense of clearing the record of any cloud upon its title to the liens. Texas Reserve Life Insurance Co. v. Security Title Co., 352 S.W.2d 347 (Tex. Civ.App.—San Antonio 1961, writ ref'd n. r. e.); Allen v. Allen Title Co., 77 N.M. 796, 427 P.2d 673; Montgomery v. Bank of America Nat. Trust & Savings Ass'n., 85 Cal.App.2d 559, 193 P.2d 475 (1948). Instead, it chose to ratify and affirm the act of the agent in recording such releases and to pursue its remedy against Ben T. Davis by taking new notes and new security from Davis. By so doing, appellant elected to ratify the act of the title company in recording the releases and waived any right to recover damages against the title company.

In Texas Reserve Life Insurance Co. v. Security Title Co., supra, the Court stated:

"Appellant's main contention is that the Title Company having negligently caused the deeds to be recorded without the Goad lien having been released, became liable to appellant in damages for the amount it was required to pay in order to secure title to the San Pedro property free and clear of liens. We do not agree. As between appellant and the Title Company the facts are not in dispute. Undoubtedly, the Title Company was negligent in recording the deeds before a release of the lien was received, and was liable to appellant for such damages as appellant suffered by reason thereof, had appellant elected to pursue such remedy. * * * Thus, it is clear that when appellant discovered that the deed had been recorded without release of the lien against the San Pedro property, it was put to an election either to repudiate the act of the Title Company in recording the deed, in which event it could have recovered from the Title Company the necessary expense of clearing the record of any cloud upon its title to the Broadway property, or to accept the deed and recover from Lowery, under the contract, the amount necessary to pay off and secure a release of the lien against the property it received from Lowery, but appellant could not pursue both remedies. The remedies are inconsistent. Mosher Mfg. Co. v. Eastland, W. F. & G. R. Co., Tex.Civ.App, 259 S.W 253; 15–B Tex. Jur. 329, Election of Remedies, § 2. Under the undisputed facts established in this case, appellant made the election to accept its deed to the San Pedro property, thus encumbered, and proceed against Lowery to make good on his contract. By so doing it elected to ratify the act of the Title Company in recording the deeds and waived any right it had to recover damages against the Title Company."

The judgment of the trial court is affirmed.