H. H. NASH v. S. M. BRAMAN COMPANY AND OTHERS.
ROY COURTEAU AND OTHERS v. SAME.
CHARLES M. THOMSON, TRUSTEE, CHICAGO & NORTH
WESTERN RAILWAY COMPANY, GARNISHEE.
JAMES B. NILES AND OTHERS, INTERVENERS.[1]

April 25, 1941.

No. 32,738.

[1]Reported in 297 N. W. 755.

*George H. Niles* and *I. W. Stark,* for appellants.
*Hall, Catlin & Gold,* for respondent H. H. Nash.
*Jacob Garon,* for respondent S. M. Braman Company.
*Albert Pfaender,* for respondent John O. Chapman.
*Thomas E. Wiley,* for respondent George B. Neeck.
*Warren Newcome* and *G. H. Henke,* for garnishee.

HOLT, JUSTICE.

H. H. Nash sued S. M. Braman, doing business as S. M. Braman Company, in the district court of Lyon county, this state, wherein, upon stipulation, judgment against defendant was rendered October 30, 1939, for $1,032.70. In that action plaintiff had filed an affidavit for garnishment of the trustee of the Chicago & North Western Railway Company on March 28, 1939, and on the same day issued the summons, complaint attached, and served the garnishee summons, upon the station agent of the garnishee at Marshall, in said county, and mailed the summons and complaint attached, together with a copy of the garnishee summons with proof of service thereof to the sheriff of Hennepin county for service upon defendant. The sheriff received the documents March 29 and served them on defendant March 31, 1939. On April 6, 1939, defendant appeared generally and demanded that venue be changed to Hennepin county, his place of residence. The clerk, pursuant to the demand, transmitted the files to the district court of Hennepin county; but that court, on plaintiff's motion, remanded the cases to Lyon county, for the convenience of witnesses. The disclosure was set for April 25, and the garnishee disclosed nothing due. Plaintiff, on December 22, 1939, filed a supplemental complaint in the garnishee proceeding. Issue was joined by the garnishee.

By written assignment dated March 29, 1939, defendant Braman, for value, assigned and transferred to Fourth Northwestern National Bank of Minneapolis $2,185 of any amounts then due him

from the garnishee. This assignment was delivered to the bank in the morning of March 30, 1939, and thereafter the bank, for value, assigned and transferred the same to intervener J. B. Niles, who is now the owner thereof.

On March 27, 1939, Roy Courteau and Louis Trosin served summons and complaint in three actions in the municipal court of the city of Minneapolis against S. M. Braman, and in the one for which judgment was entered July 7, 1939, for $402.43, an affidavit for garnishment of the trustee of the Chicago & North Western Railway Company was filed, and the garnishment summons served upon the garnishee during the forenoon of March 30, 1939. In the other two actions in said court, one for $430.32 and one for $515.40, the affidavits for garnishment were filed and the garnishee summons were served on the garnishee on March 31, 1939.

There were subsequent suits and garnishments in Winona county, and in Iowa, but there is no need to refer to them since the only parties involved in this appeal are Nash, the respondent, and Niles and Courteau and Trosin, the appellants. All, however, joined in a stipulation, dated February 9, 1940, and filed in the district court of Lyon county in the Nash case, that the venue be changed in all the actions and in the ancillary garnishment proceedings mentioned to the district court of Brown county, and "that the garnishment and ancillary complaint proceedings may be set for trial and determined by the Honorable A. B. Gislason, Judge of said District Court." The clerks of the different courts transmitted the files accordingly. The trial took place, and the court filed findings of fact and conclusions of law August 12, 1940. The court found that on March 28, 1939, there was due the sum of $3,480.01 from the garnishee to defendant Braman; and concluded that, first, Nash was entitled to judgment against the garnishee for $1,079.14, then intervener J. B. Niles for $2,185.00, and the interveners Courteau and Trosin for the balance of $215.87. The interveners separately moved for amended findings or a new trial. The motions were denied, except this was added to the findings filed August 12, 1940:

"That prior to June 26, 1940, the plaintiffs Corteau and Trosin filed supplemental complaints in intervention in the action wherein H. H. Nash is plaintiff, and on June 26, 1940, the plaintiffs Courteau and Trosin and James B. Niles made a motion before this Court for a dismissal of the garnishment proceedings in the H. H. Nash action on the ground that the Court had no jurisdiction over the subject matter of said action, that the garnishment affidavit was filed before any summons or complaint had issued, and that said proceedings were in all things void on their face."

The learned trial court correctly stated:

"The court had jurisdiction over the person of the defendant after the service on him on March 31st, but that did not affect the status of the fatally defective garnishment. These became operative only when the garnishee appearing in the case on April 25."

But the question remains: Could such fatal defect be cured by the garnishee appearing on April 25 so as to relate back to March 28, notwithstanding the valid garnishments of Courteau and Trosin of March 30 and 31; and the assignment of March 30 of the sum of $2,185 of the amount due to defendant from the garnishee, now held by Niles? The respondent, Nash, took the position that appellants were not entitled to urge defects in his garnishment proceeding, because they had transferred their actions to the district court of Brown county and intervened in respondent's case by therein filing complaints in intervention without therein attacking his garnishment. That is true, but from the amendment added to the findings it does appear that, while the cause was on trial and before its submission for decision, appellants squarely raised the legal question that the service of the garnishee on March 28 was not valid because when the affidavit was filed and garnishee summons was served on the garnishee the summons in the main action had not been issued to the sheriff for service. Our decisions are clear that no property or credits of a defendant in the hands of a garnishee are laid hold of by the service of a garnishee summons on the garnishee unless there is a main action pending

or unless the summons therein is issued and in the hands of the proper officer for service. In Borgen v. Corty, 181 Minn. 349, 232 N. W. 512, we held, in case of an attachment, that the summons must be issued at or before the time the writ of attachment is levied, and that to constitute issuance of summons it must be either served or delivered to the proper officer for service. In Chapman v. Foshay, 184 Minn. 318, 321, 238 N. W. 637, it was held that the "issuance of the summons" has the same meaning in garnishments as in attachments. The court followed and applied the same rule in the garnishment of Melin v. Aronson, 205 Minn. 353, 357, 285 N. W. 830. Here Nash served the garnishee summons on the garnishee a day before the summons in the main action was in the hands of the sheriff for service. That defendant made a general appearance and demanded a change of venue and the garnishee appeared and disclosed on April 25 could not affect or cut off rights which in the meantime had lawfully impounded the property and credits of defendant in the hands of the garnishee.

Respondent and the trial court took the position that appellants as interveners could not question the defects and irregularities in the Nash garnishment; and also that the interveners, having transferred their proceedings to the district court of Brown county for decision and having by complaints in intervention stated their claims without therein making any objection to the defective service of the garnishee summons in the Nash garnishment, have waived the defects which existed. Whatever force there might be in such contention disappears in view of the amendment to the findings above quoted. While interveners were not entitled to a dismissal of Nash's garnishment, they were entitled to a decision as to whether that garnishment was ahead or behind their claims. Much is made of this quotation from 7 C. J. S., Attachment, § 341, p. 547:

"Under some statutes a junior attaching creditor may intervene in a prior attachment suit and there contest his rights with plaintiff in that suit, although he cannot be let in to defend the suit

and dispute the grounds of the attachment in lieu of defendant, nor to defeat the attachment for mere errors or irregularities in the proceedings. A junior attaching creditor cannot, however, intervene as a claimant of the property in his own right."

The following authorities are to the same effect: Merrill & Bridges v. Vaughan, 118 Ala. 438, 24 So. 580; Glaser v. First Nat. Bank, 62 Ark. 171, 34 S. W. 1061, 35 L. R. A. 765; Strawberry Growers' Selling Co. Inc. v. Lewellyn, 158 La. 303, 103 So. 823 (annotated, 39 A. L. R. 1502, et seq.). In the Alabama case cited the claimants of the garnished fund came into the garnishment suit and moved to have the garnishment dismissed on the ground that the garnishee was served with garnishee summons before the summons in the main action had issued. It was issued the same day but after the garnishee was served. The garnishee appeared and disclosed a sum due defendant but stated it was claimed by Merrill & Bridges. Under a statute so authorizing, the claimants came into the garnishee proceedings and at the trial moved the court to exclude the writ of garnishment from the evidence because there was no authority to issue it before the summons was issued in the main action. The court said [118 Ala. 441, 24 So. 581]:

"If it be admitted that the issuance of the writ of garnishment by the justice before the summons and complaint were actually placed in his hands, was a defect or irregularity such as, between the plaintiff and the garnishee, might have avoided the writ, on the motion of the latter, properly and seasonably made, yet, it was one which the garnishee, by appearing and answering without objection, waived. Such a defect, available to the garnishee, was not involved in the issue between the plaintiff, or garnishing creditor, and the claimants, and they cannot avail themselves of, or be permitted to inquire into, any mere defects or irregularities in the original proceedings [citing authorities]. Neither the writ of garnishment, nor any proceeding in the suit against the defendant or garnishee were void, but were regular, on their face.

In cases of this character, courts take no account of fractions of a day."

Under the rule announced in the authorities cited, we still think a junior garnisher may attack a prior garnishment by showing it was made without authority of law and that the junior garnishment, lawfully made, took place before the defect or illegality in prior was waived. Courteau and Trosin's first garnishment became effective March 30, and the other two the next day. There was no waiver by defendant until he appeared generally and demanded a change of venue, and none by the garnishee until April 25, when disclosure was made. It would seem unreasonable that such waiver could cut off rights lawfully secured on March 30 and 31 by the garnishments of Courteau and Trosin, which were not defective in any respect. Rice v. Dorrian, 57 Ark. 541, 22 S. W. 213, also cited by respondent, was thus referred to in Glaser v. First Nat. Bank, 62 Ark. 171, 180, 34 S. W. 1063, 35 L. R. A. 765:

"This court held that the junior attacher had the right to dispute the validity of the first attachment, and to establish the right of his own to precedence, by showing that the first existed without the authority of law."

Under our law as now established by Borgen v. Corty, Chapman v. Foshay, and Melin v. Aronson, *supra,* the Nash garnishment of March 28 was without authority of law. We think these authorities tend to support our view: Deere, Wells & Co. v. Eagle Mfg. Co. 49 Neb. 385, 68 N. W. 504; Jacobs v. Hogan, 85 N. Y. 243; Seibert v. Switzer, 35 Ohio St. 661. In the Nebraska case, the third part of the syllabus is:

"While the defendant in an attachment case may waive mere irregularities, he cannot, as against junior attaching creditors, waive a substantial departure from the mode prescribed by law for giving effect to the attachment, nor can he waive defects which prejudice the substantive rights of such creditors."

If we may regard the affidavit as a mere irregularity in the Nash garnishment, the service of the garnishee summons therein was without authority of law. By stipulation all these garnishment proceedings came before the court for decision—and priorities became one of the issues. Courteau and Trosin were permitted to file complaints in intervention in the Nash garnishment and make the motion stated in the amended findings. Under 2 Mason Minn. St. 1927, §§ 9263, 9366, priorities of the several claimants were for determination.

On this appeal no question is raised by anyone as to the precedence of the intervener Niles over the three garnishments of Courteau and Trosin, notwithstanding the assignment to the Fourth Northwestern National Bank was not filed as authorized by 2 Mason Minn. St. 1927, § 8472, and the absence of a finding of good faith of the assignment. The valuable consideration is found in detail and so clearly established that all parties to the litigation considered that good faith could not be questioned.

Our conclusion is that since the Courteau and Trosin garnishments take precedence over that of Nash there will be nothing for the latter in the hands of the garnishee to apply upon his judgment.

The order is reversed and the cause remanded with directions to amend the findings and conclusions of law in conformity herewith.